JOSSEY *et al. v.* GEORGIA AND ALABAMA RAILWAY
COMPANY *et al.*

Where the law requires the principal office of an incorporated railway company to be located at a designated point, such provision relates to that office only which pertains to the management and control of the corporate affairs proper, as distinguished from the mere administrative offices which may from time to time be created by the corporation for the purpose of more conveniently transacting the business for the conduct of which it was created; and while the location of the principal office, when once established under the charter, passes beyond the mere discretionary control of the corporate directory, those of the latter class are subject to the corporate control and may be removed so often as in the discretion of the board of directors such removal is necessary to the successful operation of the business of the corporation.

Argued October 21, 22, — Decided November 27, 1897.

Petition for injunction. Before Judge Littlejohn. Sumter county. August 28, 1897.

*J. E. D. Shipp, James Taylor, J. H. Lumpkin, J. F. Watson* and *Allen Fort,* for plaintiffs.

*Charlton, Mackall & Anderson* and *E. A. Hawkins,* for defendants.

ATKINSON, J. On June 17, 1884, the Americus, Preston & Lumpkin Railroad Company was incorporated by the secretary of State under the general law of this State. Touching the location of its principal office, the application for the charter contained the following: "The principal office and headquarters of said railroad company for the transaction of the business of the company appertaining to its management shall be in the city of Americus, Sumter county, Georgia." The granting of the charter carried with it this statement of the place of the location of the principal office of the company. Subsequently that company was reincorporated under the name of the Savannah, Americus & Montgomery Railway; and the properties of the latter company having been sold out at a judicial sale, it was reorganized under the name and style of the Georgia & Alabama Railway. There was no provision variant from the one above expressed touching the location of the principal office of either of these corporations; so that it may safely be said that the

principal office of the railway company last named was located in the city of Americus. For the management of its railway business the directory of these corporations had organized various departments, consisting of a department for the management of its traffic with the public and with other railway companies, a department for auditing the accounts of the railroad company, and others of like character organized for special purposes connected with the administration of the railway business which was conducted by the several railroad companies above named. The railway company last named had projected the removal of these various offices to a point other than the city of Americus, or rather the establishment of branch offices of like character at other points for the more convenient transaction of its business. To prevent this a petition in equity was filed by which certain citizens of the city of Americus and stockholders of the company sought to enjoin the contemplated removal of these respective offices, alleging, as the substantial equity in their favor, that the principal office of the corporation was fixed by its charter in the city of Americus, and having been so fixed, a change of the corporate situs could not be accomplished directly or indirectly by the action of the directors alone, without procuring an amendment of the charter authorizing such a step. The defendant answered, denying its purpose to remove the principal office of the corporation from the point designated in the charter, but admitting a purpose to establish at the city of Savannah, in this State, a branch office in connection with its traffic and auditing departments. Upon the hearing the trial judge refused to grant the injunction, and the complainants excepted.

Under the view we take of this case, it is unnecessary to set out in full the evidence introduced upon the hearing, or in full the minor contentions of fact which appeared in the pleadings. The main question is, has a court of equity jurisdiction to control the board of directors in respect of the matter indicated? The solution of this question depends upon whether or not the corporation, through its directory, is proceeding to do some act in violation of its charter, which is prejudicial to the rights of stockholders, and to the rights of others who may

be interested in the performance of its corporate functions. It will not be seriously questioned that when the situs of a corporation is once established by its charter, unless provision is made therefor in the charter itself, the directors have not authority to change the place of the corporate abode, and if the contemplated action involves such a change, the judgment of the court denying the injunction was error. We do not think that such a purpose can be legitimately comprehended within the projected plan of the corporation to establish branch offices for the transaction of its business. The business of a railroad corporation, because of its nature, must of necessity be conducted in places other than that fixed by its charter as the place of location of its principal office. While the latter place must be the point at which the corporation as a corporate entity resides, it is indispensable to its business that it shall be enabled elsewhere to establish offices of a purely administrative character; and a distinction must be taken between the principal office of a corporation proper, and those administrative offices which may from time to time be created by the corporation for the more convenient transaction of the business for the conduct of which it was created. It must have a place at which it may be sued, at which its corporate functions may be performed; but this does not negative the right to establish other places for the transaction of the industrial business of the corporation. As will be seen by the extract from the charter which we have quoted, the principal office and headquarters of the railway company for the transaction of the business of the company appertaining to its management, that is to the management of the corporation itself, was required to be located in the city of Americus. To that extent the charter speaks in no uncertain terms; and touching the business which is to be transacted in the management of the affairs of the company, no other place can be substituted for that provided by the positive statement of the charter. Are the offices intended to be removed corporate offices in the proper sense? The office of the president of the company, and the offices of that class of officers who stand for and represent the corporate entity, must be there located. The books of the company showing the subscription to its stock

must be there kept for the information of its stockholders and shareholders. There must be transacted the corporate business proper, there "its profits must come home to it" to be distributed among its stockholders, and there must be kept the offices of those persons who are engaged in the management of the corporate affairs. There also its corporate meetings must be held. As we have seen, this constitutes the principal office of the corporation; but as to mere administrative offices, there is no requirement of the charter that they shall be located at any particular point. It is indispensable to the successful operation of the business for which the corporation was created, that the creation, management and control of these administrative offices must rest within the discretion of the directory; and hence when the corporation fixes its principal office at a particular point, the words "principal office" must be held to include only such offices as are created by the charter, or by the directory in pursuance of the charter, for the administration of the corporate affairs proper. We treat the words "headquarters" and "principal office," as employed in this charter, as being synonymous, but even if the word "headquarters" amplified the general significance of the term "principal office" so as to include within that definition the administrative offices which we have hereinbefore undertaken to define, there is no authority of law for engrafting upon the charter such an enlargement. The statute under which this railway company was incorporated does not use the word "headquarters," but only requires that the applicants for the charter shall state "the place where its principal office is to be located"; and therefore there was no authority of law in the secretary of State to fix the "headquarters" of a corporation, unless the word "headquarters" be included within the definition of the term "principal office." Aside from this, construing this word in accordance with the context of the provision of the charter above referred to, it manifestly refers to the same class of business which is to be performed in connection with the "principal office"; for if we omit from this provision of the charter the words "principal office" and substitute for them the word "headquarters," it would in no manner change the mean-

ing of that provision, and the word "headquarters" of said railway company would then serve only to fix the place "for the transaction of the business of the company appertaining to its management." If only the business of the company which appertains to its management as a corporation is to be transacted at the headquarters of the company, then the use of the word "headquarters" does not signify more than the term "principal office," and could not exclude the discretionary power of the board of directors to establish administrative offices for the conduct of the business of the corporation at places other than the headquarters of the company. So that, however we may construe the terms "principal office" and "headquarters," we are led inevitably to the conclusion that they do not include the purely administrative offices of the company so as to fix their location at a designated point. This being true, inasmuch as there was no purpose upon the part of the railway company to remove from the city of Americus offices other than those of a purely administrative character, our conclusion is that the circuit judge did not err in refusing to grant the injunction prayed for.

*Judgment affirmed. All the Justices concurring.*