## McCANDLESS *et al. v.* INLAND ACID COMPANY.

1. Under the allegations of the amendment to the plaintiff's petition the plaintiff had such a perfect equity in the property in controversy as to authorize a recovery of the same from the defendants, and it was not essential to the maintenance of this cause of action that the holders of the legal title to the property should be made parties to the case.

2. In an action brought by a plaintiff to recover possession of land the petition alleged that the plaintiff was the owner of the land under written evidence

of title. An amendment was offered setting up that the plaintiff at the commencement of the action was the equitable owner of the land, and as such entitled to the possession of the same. *Held*, that the amendment did not set forth a new and distinct cause of action.

3. A charter granted by a superior court upon a petition alleging that the principal office of the company is to be located in the county in which the petition is filed is a valid charter, notwithstanding the corporation owns no property in that county and the work in which the corporation is to be engaged is to be carried on in another county.

4. While a corporation chartered by a superior court can not transact the business for which it is organized until at least ten per cent. of the capital stock has been actually paid in, such corporation may be organized immediately upon the granting of the charter, take steps to secure subscriptions to the capital stock, and collect the same either in money or in property ; and as soon as ten per cent. of the capital stock is so paid in, the corporation may exercise all the corporate powers granted in the charter.

5. The evidence demanded a verdict in favor of the plaintiff, and the court did not err in directing the jury so to find.

Submitted May 1,— Decided July 22, 1902. Rehearing denied August 6, 1902.

Equitable petition. Before Judge Janes. Haralson superior court. July 18, 1901.

*King & Spalding* and *Edwards & Ault*, for plaintiffs in error.

*E. S. Griffith, W. F. Turner, A. T. London,* and *J. D. Little,* contra.

COBB, J. The Inland Acid Company brought suit, in the superior court of Haralson county, against McCandless and others, for the recovery of a lot of land and the mineral interest in three other lots, for injunction, the cancellation of certain deeds, and other relief. The petition alleged that the plaintiff claimed title to the property sued for, under a deed conveying the same to the plaintiff from a named person and on a given date. The defendants in their answer disclaimed title to the lot first indicated above, and at the January term, 1899, the court directed a verdict in favor of the plaintiff. The case came to the March term, 1899, of this court, and the judgment directing a verdict was reversed upon the ground that the court erred in holding that a sheriff's deed was not within the operation of the registry laws of this State. 108 *Ga.* 618. A second trial was had at the July term, 1900, of the superior court of Haralson county, and that trial resulted again in the court directing a verdict for the plaintiff. The case came to this court at the October term, 1900, and the judgment was again reversed, this court holding that the direction of a verdict was improper, for the

reason that the evidence did not show that the plaintiff had title to the property in controversy; the ruling being contained in the first headnote, which is in the following language: "A deed to designated persons 'as incorporators' of a named 'company' which had not in fact been incorporated did not, upon the granting by a superior court of a charter to a company of like name and composed of these same persons, ipso facto operate to pass to such company the legal title to the property in the deed described." 112 *Ga.* 291. At the January term, 1901, of the superior court, the plaintiff offered an amendment to its petition, in which it alleged that it claimed "equitable title to all the property" described in the petition, and then alleged that the corporators of the plaintiff, prior to its incorporation, with the expectation, purpose, and agreement of procuring a charter and organizing the corporation afterwards formed as the Inland Acid Company, upon negotiations through Singleton, one of the corporators above referred to, who acted by agreement for all the corporators, purchased the mineral interest in the three lots above referred to, for a valuable consideration, Singleton taking the deed in his own name, by agreement, for the use and benefit of the corporators until the company was chartered and organized. Each of the corporators contributed to the payment of the purchase-money, and they took possession of the property under the deed and mined and operated the property until the corporation was organized, when they turned over the possession of the property to the corporation. The corporators filed a petition to the superior court, praying that they might be incorporated as the Inland Acid Company; and, after proper notice had been given, an order granting a charter was obtained. The corporators met and organized, subscribing for all of the capital stock, electing officers, and tendering to the company the property they acquired from Singleton in full payment of their subscriptions, and the property was so accepted by the company and the subscribers released from further liability on account of such subscriptions; the reasonable cash value of the property being sufficient to discharge in full such liability. The corporation then went into possession and mined and operated the property, laying out large sums of money and continuing in adverse, public, uninterrupted, and peaceable possession of the property under the deed to the corporators until forcibly ousted by the defendants. Since the filing of the petition the corporators, recog-

nizing that they were holding the legal title for the benefit merely of the corporation, have executed deeds to the corporation to the mineral interest in the three lots referred to in the petition. The plaintiff averred that upon the facts above alleged it was, at the time of filing the petition, the equitable owner of the property and as such entitled to recover the same.

This amendment was allowed and filed, and at the same term a motion was made to strike the amendment, upon the grounds, that it set-forth no cause of action, and that, even if a cause of action was set forth therein, it was a new and distinct cause of action, in that in the original petition the plaintiff relied for a recovery on a strict legal title to the property sued for, and the amendment was a departure from this claim, being founded upon an equitable title which was not referred to in the original petition nor there relied upon as a ground of recovery; and on the further ground that the amendment was defective for the reason that there was a non-joinder of parties defendant. The court overruled the motion to strike the amendment, and the defendants filed their exceptions pendente lite, which were duly certified and entered of record. The defendants answered the petition as amended, denying that the plaintiff had either a legal or equitable title to the property in controversy, and also denying all the material averments in the petition in reference to the manner in which the plaintiff claimed to be the equitable owner of the property. They further denied that the plaintiff was a corporation under the laws of this State, it being averred that the alleged charter of the company was granted by a superior court of a county which had no jurisdiction to grant the same; and that even if the court had jurisdiction to grant the charter, the corporation had no right to exercise corporate powers and privileges until ten per cent. of the capital stock had been paid in, and that this has never been done as required by law. Upon the pleadings as amended the case went to trial for the third time, and the judge again directed a verdict in favor of the plaintiff. The case is here upon a bill of exceptions assigning error upon the refusal to strike the amendment to the plaintiff's petition, and upon various rulings made at the trial.

1. Were the allegations of the amendment to the petition sufficient to authorize a recovery by the plaintiff as the equitable owner of the property in controversy? While under the deed to M. T.

Singleton he acquired the legal title to the property conveyed, he in equity held the same for the benefit of himself and associates, to be used in the mining enterprise which was to be carried on by them through the instrumentality of the corporation thereafter to be organized. Although the deed from M. T. Singleton to himself and his associates passed the legal title to the grantees, still they held the same in equity subject to the agreement above referred to, that is, that the property should be used for the benefit of them all in the mining enterprise which was to be carried on by the corporation to be formed. Under the allegations of the amendment, any one of the grantees in this deed, after the creation of the corporation, could in equity compel the other grantees to convey the property to the corporation in execution of the trust which arose by virtue of the agreement between the parties. The grantees did not stand seized of the property as tenants in common, each owning an absolute interest in the property, but in equity each was seized of his interest in the property for the benefit of all in the mining enterprise which was thereafter to be conducted by a corporation chartered under the laws of this State. As soon as the corporation was created and became capable of acquiring title to property, it became the equitable owner of the property.

The transaction between Singleton and his associates was in effect an agreement between them to hold the title to the property until the corporation should come into existence, and then convey the same to it. It was similar to a conveyance to a person in trust until another person should come into being. Under such circumstances, as soon as the person for whose benefit the trust is created comes into being and becomes capable of holding property, the trust becomes executed; and notwithstanding the trustee still holds the legal title, equity considers the person for whose benefit the trust was created the owner of the property for all purposes. So in this case the moment the corporation was created and became authorized under the law to acquire property, it could have compelled Singleton and his associates to convey the property to it; and if they failed or refused to do this, equity, considering that done which ought to have been done, would treat the corporation as the owner of the property, notwithstanding the naked legal title was still outstanding in Singleton and his associates. The petition alleged that the corporation was duly chartered and legally organized. Under

these averments, the corporation became in equity the owner of the property, and as such could maintain an action to recover possession of the same against one who had wrongfully dispossessed it, or could recover upon its prior possession against one who was a mere wrong-doer. See *Pitts* v. *McWhorter*, 3 *Ga.* 5, and Van Epps' annotations in reprint edition. It is said, however, that the doctrine that a perfect equity is equivalent to the legal title is restricted to the relation of vendor and purchaser (see *Howell* v. *Ellsberry*, 79 *Ga.* 480, and cases cited), and that in the present case M. T. Singleton and his associates and the Inland Acid Company as a corporation did not sustain to each other this relation. It is true that the consideration upon which Singleton and his associates agreed to convey the property to the Inland Acid Company when it should be organized as a corporation did not move from the corporation, for the reason that at the time the agreement was entered into the corporation was not in existence. When the legal title to the property was in M. T. Singleton alone, under the allegations of the amendment, the agreement between him and his associates was that he was to convey the property to himself and associates, to be held by them for the benefit of another person that was to come into existence, that is, the corporation, and in the meantime to hold and use the property for the purposes which were to be afterwards carried out through the instrumentality of the corporation, and that the full purchase-price was paid to M. T. Singleton. The relation of vendor and purchaser existed between M. T. Singleton and the grantees in the deed from him, and his grantees were to hold the property in trust for the benefit of another person thereafter to come into existence; and as soon as that person came into existence and was authorized under the law to acquire property, it occupied the status of a purchaser from M. T. Singleton. While a deed from the grantees of M. T. Singleton was necessary to clothe this purchaser with the legal title to the property, it was in equity a purchaser from M. T. Singleton. Though a stranger to the consideration, it is no less a purchaser.

It is said, however, that the amendment should not have been allowed, because, even if under the facts alleged the plaintiff was the equitable owner of the property, it was necessary, in order to obtain a decree to this effect, that M. T. Singleton and his associates should have been made parties to the case. When a plaintiff

seeking to recover possession of real property is not the holder of the legal title but relies upon a perfect equity, it is not absolutely essential that the person in whom the legal title to the property is vested should be made a party to the suit. It is necessary, of course, that the allegations should be such as to show that the equity set up by the plaintiff is superior to the outstanding legal title, and a judgment in the case would not conclude the holder of the legal title, if he was not a party to the case. In the present case, under the facts alleged, it not only appears that the plaintiff has a perfect equity to the property in controversy, but it also appears that the holders of the legal title which was outstanding at the time the suit was brought have conveyed to the plaintiff all of their interest in the property. The court did not err in overruling the motion to strike the amendment, so far as it raised the questions that there was no cause of action set forth therein, and that there was a want of proper parties.

2. It is said, though, that even if the amendment set forth a cause of action, it should have been stricken for the reason that it set forth a new and distinct cause of action. To determine this question it is necessary to ascertain what was the cause of action set forth in the original petition. If the right to recover the property in controversy upon the legal title was the cause of action originally set forth, then it would seem that the amendment did contain a new cause of action, for it was based upon an alleged right to recover the property upon an equitable title. It needs no argument to show that an equitable title is entirely separate and distinct from a legal title. To say, however, that the cause of action set forth in the original petition was the right to recover upon a legal title is giving the term "cause of action" too restricted a meaning. The cause of action in such a case consists, not only of the right of the plaintiff but of the wrong of the defendant. The right of the plaintiff consists in being entitled to the possession of the property which is owned by him, and the wrong of the defendant consists in his withholding from the plaintiff that which is rightfully his. Under this view of the matter the cause of action set forth in the original petition was based upon two facts: ownership of the property by the plaintiff, and the wrongful withholding of possession by the defendants. The purpose of the suit was to recover of the defendants that which they were wrongfully with-

holding from the plaintiff, that is, the possession of the property. If this be a correct analysis of the petition, then any fact which would tend to establish that the plaintiff was the owner of the property and entitled to the possession thereof as against the defendants would be germane to the cause of action set forth in the petition. If the plaintiff's cause of action was based upon ownership, then anything which tended to show ownership would be part and parcel of the cause of action. Ownership of land may be shown by written evidence of title, or by facts from which a jury could find that the plaintiff had a perfect equity in the property. The plaintiff seeks to recover the land because it is the owner of the same. It is true that in the original petition it is alleged that the plaintiff is the owner because it has written evidence of title. In the amendment it still maintains that it is the owner and does not depart from this claim, but says its ownership is derived, not from written evidence of title, but from a state of facts which gives it such an equity in the property as to entitle it to maintain its action. Under this view the amendment did not set forth a new and distinct cause of action, and the motion to strike the same was properly overruled. See generally, on the subject of cause of action, 1 Enc. P. & P. 116 et seq; 5 Am. & Eng. Enc. L. (2d ed.) 776; 1 Rap. & Law. Law Dict. tit. Cause of Action; 1 Cyc. Law & Pro. 634 et seq.; Bliss, Code Pl. (3d ed.) § 126; Andrews' Steph. Pl. (2d ed.) § 244; Veder v. Baker, 83 N. Y. 160 ; Sibley's Right to and Cause for Action, § 26 et seq. There is nothing in the case of *White* v. *Moss*, 67 *Ga.* 89, which conflicts with the ruling now made. While in that case Mr. Justice Crawford said that an amendment in an action of ejectment setting up an equitable title in the plaintiff added a new cause of action, still the case was really decided upon the point that the amendment was properly disallowed, because, under the law as it then stood in this State, new parties could not be made at law by amendment, and it was necessary to the maintenance of the cause of action set forth in the amendment that other parties should be brought into the litigation. Neither is there anything in this ruling which conflicts with the numerous rulings of this court to the effect that where a suit is brought seeking to enforce a common-law liability an amendment seeking to enforce a statutory liability adds a new cause of action. One test as to whether the amendment adds a new cause of action is whether

the judgment in the case as it originally stood would bar a suit upon the cause of action alleged in the amendment. Under this test, in a case of the character of those last referred to, the amendment would add a new cause of action, for the simple reason that one who seeks to enforce a common-law liability and fails will not be precluded from enforcing a statutory liability against the same parties, growing out of the same state of facts. If we have correctly analyzed the petition in the present case as one in which a recovery is sought because the plaintiff is the owner of the property, then all rights of ownership are thus directly involved in the litigation and a finding in favor of the defendants would have forever precluded the plaintiff from bringing another suit against the defendants to recover the property upon the facts alleged in the amendment.

3. The defendants filed a plea setting up that the Inland Acid Company is not a corporation under the laws of this State, for the reason that its alleged charter was granted by the superior court of Polk county, that the business intended to be carried on was that of mining ore in the county of Haralson, and that it does not appear that the plaintiff owned any property in Polk county or intended to transact any business in connection with the mining of ore in that county. It appears from the evidence that M. T. Singleton and his associates filed a petition addressed to the superior court of Polk county, praying that they might be incorporated under the name of the Inland Acid Company, reciting in their petition that the office and place of business of the corporation was to be at Cedartown, in that county; and that an order was passed by the judge of the superior court, incorporating the Inland Acid Company as prayed for in the petition. It also appears from the evidence that the property in controversy is located in the county of Haralson, and that the mining operations of the corporation were conducted wholly in that county. The superior courts of this State have the power to create corporations of the character of that sought to be created by the petition of M. T. Singleton and his associates. The jurisdiction of the superior court of a particular county to grant a charter to a corporation depends upon the allegations in the petition; the law declaring that "persons desiring the charter shall file, in the office of the clerk of the superior court of the county in which they desire to transact business," a petition setting

forth the object of the association, etc., and that this petition shall be published " in the nearest public gazette to the point where such business is located." Civil Code, § 2350. If the petition shows upon its face that the corporation is to transact business in the county in which the petition is filed, the superior court of that county has jurisdiction to grant an order creating the corporation. A corporation transacts its business at the place where its members are required under the charter to meet for the purpose of attending to the affairs of the corporation, that is, at the place where its principal office is located. A corporation may transact its corporate business in one place, and the work necessary to effectuate the purposes of the corporation may be carried on in an entirely different place. That is to say, the principal office of a corporation need not be at the place where the work of the corporation is being carried on. It is not absolutely essential that the corporation should own property at the place where its principal office is located. The requirement in the code, that the petition shall be filed in the county in which the corporation desires to transact business, refers to the transaction of corporate business, such as the meeting of the members of the corporation for the purpose of organizing and attending to the corporate affairs of the company; that is, the statute refers to the county in which the principal office of the corporation is located; and the requirement that the petition shall be published in the nearest public gazette to the point where such business is located refers to the business of the corporation usually transacted at its principal office. The petition for incorporation in the present case alleged that the principal office of the corporation was to be at Cedartown, which is in the county of Polk, and the superior court of that county had jurisdiction to pass an order granting the application for a charter. See, in this connection, *Jossey* v. *Railroad Co.*, 102 *Ga.* 706.

4. It is said the court erred in directing a verdict in favor of the plaintiff, for the reason that it did not appear that ten per cent. of the stock of the Inland Acid Company had been paid in, and that until this was done it had no right to exercise corporate powers. The petition for incorporation recited that ten per cent. of the capital stock had been actually paid in. It is not necessary, however, to determine in the present case whether this recital in the petition is conclusive evidence of this fact as against one who is a mere trespasser upon property claimed by the corporation. As

soon as a corporation is organized it certainly has a right to collect in subscriptions to its capital stock, and as soon as ten per cent. of the subscriptions is actually paid in it may begin to transact the business for which it was created. Subscriptions for stock may be collected either in cash or in property, and if collected in property, certainly a third person who is not a creditor would not have the right to raise the question that the property was not of sufficient value to discharge the amount due on the subscriptions, or that the title to the property acquired was for any reason defective. The failure of a corporation to have collected ten per cent. of the subscriptions to its capital stock would certainly be no bar to a suit which was instituted for the very purpose of complying with this requirement of the law. *Branch* v. *Glass Works*, 95 *Ga.* 573. In addition to this, it is no concern of a debtor of a corporation, or of a person who is wrongfully withholding property belonging to it, that it has not complied with the conditions precedent in its charter or has laid its charter subject to forfeiture by a nonuser or misuser of corporate powers. 1 Mor. Priv. Corp. §§ 31, 1015; *City of Atlanta* v. *Gas-Light Co.*, 71 *Ga.* 106. The undisputed evidence is that the members of this corporation agreed, at a meeting held for the purpose of organizing the corporation, that the property described in the deed from Singleton to himself and his associates should be taken by the company in full satisfaction of the subscriptions to stock which had been made by them, and that acting upon this the corporation went into possession of the property. It is true the corporation did not, under this arrangement, acquire the legal title to the property, but it became, as has been heretofore shown, the equitable owner thereof, and could assert its ownership, not only against the holders of the legal title, but against any one who claimed adversely to it. This was done before the mining operations by the corporation as such began; and as the agreed value of the property was more than sufficient, not only to pay ten per cent. of the amount subscribed for stock, but the entire amount of such stock, the corporation by virtue of this arrangement became authorized to exercise all the corporate powers that the laws of Georgia bestowed upon it.

5. The foregoing discussion deals with all of the points which were insisted on in the brief of counsel for the plaintiffs in error, except that which complains that the judge erred in directing a ver-

dict in favor of the plaintiff, for the reason that the evidence did not demand a finding in its favor. After a careful examination of the pleadings and the evidence, we are satisfied that no other verdict than the one directed could have been legally rendered in this case. Counsel for the plaintiffs in error in their brief insist that there was evidence which would have authorized the jury to find that the defendant McCandless had title to at least a one-tenth undivided interest in the property in controversy. We do not think that under the pleadings in this case there was any other issue raised than one involving the entire ownership of the property in controversy. The plaintiff relied upon an equitable title to the entire interest in the property, and the defendants McCandless and Smith claimed in their answer to be the owners of the entire interest. According to the pleadings the issue was clear-cut. It was entire ownership of the property in the plaintiff opposed to entire ownership in the defendants. The petition alleged in the 8th paragraph that "J. M. McCandless claims right and title to minerals, mining interests and privileges" in and to the property in controversy, under a deed from Redwine, who derived his title through a sheriff's sale. It was alleged in the 13th paragraph that the deed from the sheriff to Redwine and from him to McCandless constituted a cloud upon the title of the plaintiff. The answer to the 8th paragraph is in these words: "This paragraph is true." The answer to the 13th paragraph is in these words: " Plaintiff has no title as against the conveyances herein described." While in the original answer and in the different amendments to the answer there may be found general denials of those paragraphs of the petition which allege title in the plaintiff, it is apparent from the answer as a whole that the defendants relied, so far as their pleadings are concerned, entirely upon the title derived through the sheriff's deed. There is not a hint or suggestion in any portion of the answer that McCandless relied upon any other title, or that he claimed in this case any other interest in the property than that which would have resulted from the deeds referred to in the answer, if they had been valid conveyances of the property. It is true that there appears in the brief of evidence a statement that there was offered in evidence an agreement "by which M. T. Singleton sells and conveys to John M. McCandless a one-tenth interest" in the property in controversy, and that this agreement was dated Oc-

tober 16, 1895. But nowhere in the answer does the defendant McCandless plead the title apparently derived from this agreement as a defense to the plaintiff's action.

If the defendants had rested their defense solely upon a denial of the plaintiff's title, and the evidence introduced had shown that McCandless, under the agreement referred to, really had title to an undivided one-tenth interest in the property, it is possible that the direction of a verdict against him for the entire interest in the property would have been erroneous; but when in his answer he does not rest his defense entirely upon a denial of the plaintiff's title, but admits the allegation of the petition which in effect charges that his only claim to the property is under deeds of a certain date and character, and fails to prove that he does hold title under the deeds referred to in the petition, no other termination of the case could be properly had than one directing that in the issue thus made the plaintiff has prevailed, when the evidence supports the allegations of the plaintiff as to its title. The brief of evidence does not disclose the contents of the agreement under which the defendant McCandless claims to own a one-tenth interest in the property. All that appears in the record as to the character of the conveyance is in the quotation above made, which was merely a conclusion of counsel who drew the bill of exceptions, as to the legal effect of the paper. But even treating the agreement as vesting title in McCandless to an undivided one-tenth interest in the property at the date of the agreement, under the pleadings this title is not relied on as a defense in this case. It may be then asked, for what purpose was it introduced in evidence? Even if not relied upon as a muniment of title, it may have been admissible to show that at the date of the agreement M. T. Singleton was dealing with the property as his own, and apparently at that time not recognizing the trust which he afterwards set up in the property for the benefit of himself and his associates. But be this as it may, the mere fact that it was introduced in evidence will not give the defendant the right to rely upon it as evidence of title, as under the pleadings in the case there is nothing to show that this title was relied upon in any way.

*Judgment affirmed. All the Justices concurring, except Little, J., disqualified, and Lewis, J., absent.*