### DETROIT, YPSILANTI, ANN ARBOR & JACKSON RAILWAY *v.* CITY OF DETROIT.

TAXATION—STREET RAILWAYS—SITUS—PRINCIPAL OFFICE—DESIGNATION.

> The principal business office of a street-railroad company, for the purpose of fixing the place of paying its personal-property tax under the statute (§ 3831, subd. 16, 1 Comp. Laws), is in the city in which its banking is done and all its officers and directors reside and have their business offices, and not in the village where stockholders' meetings are held and its general books kept, notwithstanding it has designated the village in its articles of incorporation as its principal business office.

Appeal from Wayne; Mandell, J. Submitted April 13, 1905. (Docket No. 65.) Decided July 21, 1905.

Bill by the Detroit, Ypsilanti, Ann Arbor & Jackson Railway against the city of Detroit, Thomas M. Lucking, receiver of taxes, the village of Dearborn, and James D. Wallace, village treasurer, to determine the situs of complainant for the purposes of taxation. From a decree holding said property taxable in the village of Dearborn, the city of Detroit appeals. Reversed.

*Corliss, Leete & Joslyn*, for complainant.

*P. J. M. Hally* (*Timothy E. Tarsney*, of counsel), for defendant city of Detroit.

*Thomas G. Long*, for defendant village of Dearborn.

CARPENTER, J.  Complainant is a street-railway company having a line extending from Jackson to the western limits of the city of Detroit.  Its personal property is assessed both in the city of Detroit and the village of Dearborn, and it commenced this suit in chancery for the purpose of having the court determine in which of these places said property is legally taxable.  The court below rendered a decree holding said property taxable in the village of Dearborn, and enjoining the defendant the city of Detroit from enforcing said assessment.  From this decree the city of Detroit appeals.

The facts are stipulated, and are as follows:

"The office for the transaction of the business of said company is required by the articles of association to be kept in the village of Dearborn.  The stockholders' and directors' meetings are usually held at Dearborn.  An adjourned stockholders' meeting was held at Detroit.  The stockholders assembled at Dearborn and adjourned to Detroit.  Officers were never elected at Dearborn.  The election has been held at Detroit.  There have been five elections in the last five years.  The office was not moved to Dearborn until May, 1900.  Before that the meetings were always held in Detroit.  Since the organization of the present corporation (1901) there have been three stockholders' meetings.  There is no definite number of meetings per year.  There was no meeting held bet wen January 21, 1903 and June 11, 1903.  The secretary writes up the record book, which usually takes about an hour for each meeting.  There are five directors, all of whom live in Detroit.  Occasionally a special meeting of the directors has been held at some place other than Dearborn, wherever the directors could get together best.  One meeting was held at Ypsilanti.  There have been as many as three meetings in Detroit.  But no meeting was ever called at any other place than Dearborn.  Whenever a meeting of either stockholders or directors has been held at a place other than Dearborn, it was first called to order at Dearborn, and then adjourned to Detroit, Ypsilanti, or to whatever place it was agreed upon.

"The books and records of the stockholders' and directors' meetings and the other general books of the company

—that is, the ledger, journal, and cashbook, and all permanent records, in all five or six large books—are kept at the office in Dearborn. The secretary is in charge of the office. The bookkeeper is his assistant, and is the only one keeping books at Dearborn, and the only bookkeeper the company has. The bookkeeper spends about half of his time at Dearborn. He is not there every day. He is there as often as the work of the books and records make it necessary. He leaves Detroit about half past 8 in the morning, and stays at Dearborn until about half past 4 or 5, taking time for lunch at noon. He resides in Detroit. He does not report at the Detroit office every morning. He gets his data from all the offices along the line, including Detroit. When he is not at Dearborn, there is no one in his part of the office. The books are then locked up in the safe there. There is no stenographer or typewriter at Dearborn. The bookkeeper also acts as auditor and paymaster, and investigates conditions all along the line. There is a ticket and freight office at Dearborn, which is open from 7 a. m. until 12 midnight. The agent in charge has a typewriter, and a letter press for keeping duplicate copies of waybills.

"At Detroit the company has an office in the Majestic building, where account of the passenger traffic is kept and the tickets taken up. After being tabulated by girls, the records are transferred to the books at Dearborn. The greater part of the banking is done at Detroit at the Detroit National Bank, though a great deal is done at Ypsilanti at the First National Bank. None of the banking is done at Dearborn, though there is a bank there. There is a greater volume of work done at the Detroit office than at the Dearborn office. The Detroit office is the largest ticket office, differing in character from the Ypsilanti and Ann Arbor offices in that the tickets are counted there. A great deal of correspondence is done from Detroit. The office at Detroit is the secretary's office. His work is all along the line in connection with accounting with the different stations. The president resides in Detroit, and has his office with the Detroit & Mackinac Railway, on the same floor of the Majestic building with the complainant's office. The treasurer has his office with the Central Construction Company and the Electric Light & Power Company on another floor of the same building. A pay roll is made up twice a month at Ypsilanti under the super-

vision of the general manager. It is then sent to the secretary at the Detroit office, where the money is drawn from the Detroit National Bank, put in envelopes, and then taken and distributed by the bookkeeper to the officers, agents, and employés along the line. In the secretary's office there are five employés—four girls and one man—employed every working day during all the working hours. The supplies of the company are purchased under the supervision of the secretary, and he is the purchasing agent of the company.

"The general manager at Ypsilanti purchases supplies and makes up the pay roll, and a voucher for it is sent to the Dearborn office for entry on the books. If the president transacts any business affecting the company, a record is made and sent to the Dearborn office for transfer on the books. If the treasurer signs a pay-roll check, it is sent to the Dearborn office for record. The tickets are reported daily, and then reported to the Dearborn office for record. Every transaction of every officer and employé which affects the company finds its record upon the books at Dearborn. The files of reports from officials are kept at Detroit. Copies of reports and trial balances are kept at Detroit, so that, as a general rule, though not always, any fact shown by the books at Dearborn can be got from a file at Detroit. Everything goes on the books at Dearborn first passes through the Detroit office.

"At Ypsilanti, besides the local office, are located the office of the general manager, the dispatcher, and the master mechanic, and the power house and repair shop, and the entire operation of the road is conducted and managed from that point. Mr. Merrill consults with, and, if orders are necessary, receives them from, Mr. Hawks. The office force at Ypsilanti consists of nine persons, including a stenographer. A great many letters are written and copied there. There are 33 persons employed in the shops of the company at Ypsilanti and 19 in the power house. There are also four persons, with their headquarters at Ypsilanti, employed in what is called 'line department.' The entire freight business of the road is managed from Ypsilanti. The conductors and motormen make no report whatever to the office at Detroit, but they all report to the operating headquarters at Ypsilanti and to Dearborn and Jackson, but the account of the tickets is sent to Detroit for audit."

We may briefly summarize these facts as follows: In Detroit all of complainant's officers and directors reside. There its president, its secretary, and treasurer each has an office, and there it may properly be inferred each of these officers does the business pertaining to his office. In Dearborn are kept the records of the official and other business of complainant. There, as well as at Ypsilanti and Jackson, its conductors and motormen make reports. From the fact that complainant did no banking at Dearborn, we infer that the conductors did not, with these reports, account for the receipts collected by them. From the fact that the bookkeeper was in the office at Dearborn only about half of the time, and from the fact that nothing went on the books at Dearborn until it had passed through the Detroit office, we infer that there was no custom of complainant to approve or disapprove these reports in the Dearborn office. Under these facts, is complainant's property taxable at Dearborn or at Detroit? The act under which complainant is organized required its articles of association to state "the city or village in which the office for the transaction of their business shall be located." Section 6436, subd. 5, 2 Comp. Laws. The statute provides that:

"The personal property of street railroad, * * * cable or electric railroad, * * * shall be assessed in the township, village or city where its principal business office is situated." Section 3831, subd. 16, 1 Comp. Laws.

While it may be conceded that, if complainant had principal business offices in each of several townships, cities, or villages, it might by designation in its articles of association elect in which of said cities or villages said property should be taxed (see *City of Detroit* v. *Lothrop Estate Co.*, 136 Mich. 265), it is equally clear that such designation would be altogether ineffectual as an election unless it actually maintained a principal business office at the place designated. See *Teagan Transportation Co.* v. *City of Detroit*, 139 Mich. 1; *Detroit Transporta-*

*tion Co.* v. *Detroit Board of Assessors*, 91 Mich. 382.
Did complainant have a principal business office, within
the meaning of the statute, in the village of Dearborn ?
The claim that it had cannot rest upon the fact that it
had a local business office there like that maintained at
every other station on complainant's line.   Nor can it
rest upon the fact that conductors and motormen deposited
formal reports which were acted upon in the Detroit office.
Neither can it rest upon the fact that the bookkeeper there
made and kept the official and other books of the com-
pany.   If Dearborn may be regarded as the location of the
principal business office of said complainant, it must be
because there its stockholders and directors occasionally
met.   Is the place in which the stockholders and directors
of the corporation occasionally meet the principal business
office of the corporation ?   I think we have answered this
question by our own decisions.   In *Detroit Transporta-
tion Co.* v. *Detroit Board of Assessors*, supra, we said:

"The term ' for business,' used in the statute, cannot be
limited to so narrow a construction as to say that it means
simply the annual meeting of the stockholders or meetings
of directors."

In *Teagan Transportation Co.* v. *City of Detroit*,
supra, we said:

"By ' business ' the legislature meant something more
than the annual meeting of stockholders and newly chosen
directors."

It is true that in each of these cases the statute involved
was somewhat different from the statute controlling this
case.   But there is no such difference as to make those
decisions inapplicable.   It follows, therefore, that com-
plainant had no right to select Dearborn as the situs for
the taxation of its personal property.   It is equally clear,
under the facts stated in this opinion, that its property
was taxable in the city of Detroit, where its president,
secretary, and treasurer had their offices, and where they
did the duties pertaining thereto.   See *City of Detroit* v:

*Lothrop Estate Co., Teagan Transportation Co.* v. *City of Detroit*, supra.

The decree of the court below should therefore be reversed, and one entered in this court compelling complainant to pay its taxes in the city of Detroit, and relieving it from taxation in the village of Dearborn.

As this suit is the natural result of complainant's improper selection of the village of Dearborn as the place of taxation, it should pay the costs of this appeal.

MOORE, C. J., and MCALVAY, MONTGOMERY, and OSTRANDER, JJ., concurred.