## GEORGIA FIRE INSURANCE COMPANY· v. CITY OF CEDARTOWN et al.

1. It was stated in the application for a charter for an insurance company that its principal office would be located in a named county of this State. It established an office in a municipal corporation of that county, where its president and secretary and treasurer had their offices, where the executive committee of the directors met, and where all the business of the company was transacted, except as stated below. In a by-law it was declared that an annual meeting of the stockholders should be held "at their home office in Polk county, Georgia, at the home of W. S. Coleman, one and one quarter miles south of the court-house, or with branch offices at Cedartown, or at other places in Georgia, as may be determined by the directors." There was a similar rule as to the place of meetings of directors. Meetings of directors and stockholders were held at the residence of Coleman, who furnished a room for the purpose, free of rent. The minutes indicated that the directors held one or more meetings at the Cedartown office. An iron safe was bought later and placed at Coleman's house, when he was elected treasurer, and the company's securities were kept in it, except when there was occasion to bring them to the city office for the purpose of transfer. The company returned for municipal taxation its furniture in the city offices, but declined to return or pay municipal tax on its other personal property. Held, that the presiding judge did not err in denying an injunction to restrain the municipal authorities from collecting the tax on the personal property of the corporation, because it was claimed that its principal or home office was not within the limits of the city.

2. Section six of the general tax act of August 22, 1907 (Acts 1907, p. 37), did not exempt the personal property of an insurance company incorporated in this State from taxation because of the payment of a business or occupation tax.

(a) If the section referred to should be construed as seeking to exempt from taxation property because of the payment of an occupation or business tax by the owner, it would doubtless be unconstitutional; and if there may be two constructions of an act of the legislature, one constitutional, and the other unconstitutional, the former is to be preferred.

FEBRUARY 21, 1910.

Petition for injunction. Before Judge Freeman. Polk superior court. May 13, 1909.

*Charles G. Janes* and *Bunn & Bunn,* for plaintiff.

*John L. Tison, Trawick & Ault,* and *John K. Davis,* for defendants.

LUMPKIN, J. The Georgia Fire Insurance Company filed a petition seeking to enjoin the mayor and council of Cedartown from collecting ad valorem taxes on certain personal property consisting principally of notes, mortgages, securities, and money. The in-

junction was denied, and the plaintiff excepted.    Two controlling questions are presented in this case: (1) Was the evidence on the question as to where the principal office of the company was located, relatively to liability to taxation, sufficient to authorize the presiding judge to deny the injunction? (2) If the principal office of the company was located in Cedartown in 1908, was the complainant relieved from the payment of an ad valorem tax on its personal property by section 6 of the general tax act of 1907 (Acts 1907, p. 37)?

In the Civil Code, § 2008, which makes provision in regard to the incorporation of insurance companies in this State, one requirement is that the petition for incorporation shall state that the applicants "have given thirty days notice of their intention to apply for said charter, by the publication of said petition in the newspaper publishing the legal advertisements of the county where the principal office of said company is to be located, once a week for four weeks before the filing of said petition." The statements of the petition are required to be verified by affidavit. This shows a location in a particular county, and thus indicates the domicile of the corporation there; but the law makes no requirement for naming in the petition for incorporation a particular house or locality in the county as the home of the company. Relatively to the question of liability for taxation, if it has two offices or places for the transaction of business in that county, the question which is the principal office is one of substance and of fact, rather than one of mere declaration. A corporation may establish its principal office at a place within the county, inside of a municipality or outside of it. So an individual may live without the limits of an incorporated town, although he may transact business therein. If his residence is outside of the incorporation, personal property which would be considered as located at the place of his residence would not be subject to municipal taxation. But if an individual actually lives in a city all the year round, he can not escape municipal taxation on personalty by renting a room outside of the city, declaring it to be his home for the purpose of evading taxes, and going there and transacting business for an hour or two at a time two or three times a year. Neither can a corporation avoid municipal taxation, if its actual principal office is in a town or city in the county of its incorporation, where all of its business is transacted and its of-

ficers have their offices, by claiming as its principal office a place just outside the city or town, where valuable papers are kept in an iron safe, and meetings of stockholders or directors are held (though the by-laws permit them to be held elsewhere), but where no other business is transacted, and no agency is maintained, this being done with a view to non-payment to the municipality of taxes on personal property. In Clark and Marshall on Corporations, § 293 (a), p. 768, it is said: "Where a corporation, for the purpose of evading taxation, states in its articles of association or certificate of incorporation that its principal place of business is in a certain place, when in reality it is located and does its business in another place, the latter place may be treated as its place of business for the purpose of taxation." Detroit Transportation Co. v. Board of Assessors, 91 Mich. 382 (51 N. W. 978); Milwaukee Steamship Co. v. Milwaukee, 83 Wis. 590 (53 N. W. 839, 18 L. R. A. 353); Detroit etc. Ry. Co. v. City of Detroit, 141 Mich. 5 (104 N. W. 327). Where the law provides for naming the principal office or place of business in the articles of incorporation, it has sometimes been held that thus fixing such a place was conclusive; but even this has been doubted, if the statement was only for the purpose of evading taxation. Milwaukee Steamship Co. v. Milwaukee, 83 Wis. 590, 598.

In the case at bar, the application for the charter did not have to fix the exact location of the principal office in Polk county, except as above stated. The meeting for organization took place at what is claimed to have been a temporary or branch office in Cedartown. One section of the by-laws provided that an annual meeting of the stockholders should be held "at their home office in Polk county, Ga., at the home of W. S. Coleman, one and one quarter miles south of court-house, or with branch offices at Cedartown, or other places in Georgia as may be determined by the directors." Another section provided for meetings of the board of directors, but did not state in terms where they should take place. Another, which was headed, "Place of meetings of stockholders and directors," stated that "The meetings of the stockholders and the board of directors, both regular and special, shall be held at the home office in Polk county, Georgia, or with the branch office at Cedartown or other places in Georgia." Still another provided, that the president should appoint from the board of directors an

executive committee, who should, in the interim between the meetings of the board of directors, exercise the powers of such board in the ordinary course of business; that "said committee shall hold its meetings at Cedartown, Ga.," and have entire charge of all the investments of the company, as well as determining from time to time the company's financial policy, employing agents, making contracts, paying losses, and all things necessary to the conduct of the business, not inconsistent with the by-laws; and the committee was required to report from time to time their proceedings to the board of directors for approval and confirmation.  The statement of the company sent to the comptroller-general for the purpose of obtaining a license to do business was made on a printed form filled in with written words.  Opposite the printed words "Principal office" was written, "Main Street, Cedartown, Ga."  In the semi-annual statement made to the Governor on a printed form, opposite the words "Principal office," was written, "Cedartown, Georgia." In the blank form for agents' reports to the company was a printed heading, "The Georgia Fire Insurance Company—Home Office: Cedartown, Ga."  The same thing occurred in the printed form for monthly reports.  The printed form of tornado-insurance policy used by the company had at its head the words, "The Georgia Fire Insurance Company, of Cedartown, Ga.," and the same words were printed on the back and at the top of the standard form of fire-insurance policy used by it.  The evidence showed that the meetings of stockholders and directors were held at the house of Mr. Coleman outside of Cedartown, and that he tendered the use of a room for that purpose free of rent.  There was evidence that the general line of policy was outlined at the meetings of the directors.  The minutes indicate that one or more directors' meetings were held at the Cedartown office.  Sometime after the organization of the company Coleman, who had been the secretary, was elected treasurer.  An iron safe was moved to his house, and the securities of the company were kept in it, except when there was occasion to bring them to the city office for the purpose of transfer.  Otherwise than this, all the business was transacted at the office in Cedartown, where the president and the secretary and treasurer had offices and conducted their business.  Officers and members of the company testified in general terms that Coleman's house was the home office of the company, and that they so under-

stood in organizing it; but nothing was shown to have been done there in the conduct of the business, except as above stated; and some of the witnesses testified that the question of taxation was discussed in connection with selecting that place as the home office. The plaintiff's petition contains the following statement: "Petitioner alleges that it had the right, under the said petition and the charter granted thereon, to locate its home office or principal office at any point in said county. As aforesaid, the home or principal office was, by corporate action and the action followed by its stockholders and officers and directors thereafter, placed purposely and intentionally without the limits of the City of Cedartown for the purpose of being relieved from paying city taxes during the infancy of said corporation and while it was struggling to build up a business; and for this reason, as well as for the reason that the business of said corporation, being a fire-insurance business, is not local to Cedartown or the immediate vicinity thereof, and the further reason that from the character of the business done and proposed to be done by said corporation, it would receive practically no special protection or benefit from a residence in said city." There was some other evidence, not necessary to be set out. The company in fact paid the amount of ad valorem tax due on account of its furniture in the Cedartown office, but declined to pay on its securities and money.

There was sufficient evidence to authorize the presiding judge, passing on the question of fact only so far as to decide the application for interlocutory injunction, to hold that, relatively to. liability to taxation, the office in Cedartown was the principal office. In the petition and in the brief of counsel for plaintiff in error it was said that the branch office in Cedartown had been moved to Atlanta; and a witness so stated; and in the brief it was asked, if the principal office were declared to have been in Cedartown, where is its home office now? It may be that the office or place of business remaining in Polk county would authorize the bringing of suits there; but that does not affect the question now under consideration. The minutes which were introduced in evidence show that at a stockholders' meeting a motion was made and adopted, authorizing the board of directors to look into the advisability "of moving the home office, . . . from its present location at the home of W. T. Coleman to the city of Atlanta," leaving the

decision to the discretion of the board, and authorizing the officers to apply for any amendment to the charter necessary for that purpose. Whether such an amendment has been obtained does not appear. No reference was there made to moving the Cedartown office, as a branch office.

The ruling now made in no way conflicts with former decisions of this court, to the effect that the venue of suits against a domestic corporation is in the county where its principal office is located by its charter (*McCandless* v. *Inland Acid Co.,* 115 *Ga.* 968 (42 S. E. 449)); or that if the charter is silent on the subject, and a principal office for the purpose of electing its officers and of conducting its financial affairs has been located by the corporation itself in a certain county, it may be sued there, and can not avoid the jurisdiction by setting up that it was incorporated as a coal-mining company, and that its mining operations are conducted in another county. *Dade Coal Co.* v. *Haslett,* 83 *Ga.* 549 (10 S. E. 435). See also, on the subject of venue, *McCall* v. *Central of Georgia Ry. Co.,* 120 *Ga.* 602 (48 S. E. 157). That the venue of suits against a corporation is in the county of its residence or principal place of business fixed by its charter does not give it the power to locate in a municipality of that county its office where practically all of its business is done, its officers keep their offices and perform their duties, and its active financial operations are conducted, but obtain exemption from municipal taxation by claiming a "home office" outside the corporate limits, and holding meetings of stockholders and directors there. In *Jossey* v. *Georgia & Alabama Ry. Co.,* 102 *Ga.* 706 (28 S. E. 273), an injunction was prayed to prevent a railway company from removing its "principal office" from a certain city. The defendant denied that it intended to do so, but alleged that it intended to maintain its principal office at that place, and to establish branch offices only for administrative purposes elsewhere. In discussing the case, Atkinson, J., said: "Are the offices intended to be removed corporate offices in the proper sense? The office of the president of the company, and the offices of that class of officers who stand for and represent the corporate entity must be there located. The books of the company showing the subscription to its stock must be there kept for the information of its stockholders and shareholders. There must be transacted the corporate

business proper, there 'its profits must come home to it' to be distributed among its stockholders, and there must be kept the offices of those persons who are engaged in the management of the corporate affairs.    There also its corporate meetings must be held."    If the test of what is the "principal office" of a railroad company be applied to the question of which of the two places in Polk county was the "principal place of business" of the insurance company before us, it can not be said that the presiding judge erred in his finding on this subject.

2.   It is claimed that the company is exempted from paying municipal taxes on its personal property, by section 6 of the general tax act of 1907.    (Acts 1907, p. 37.)    The provisions of that section are not as clear as they might be.    But whatever may have been the original intent of the main body of that section, it was declared, by a proviso which was added thereto, not to work any exemption of property from taxation.    The section closes thus: *"and provided further,* that nothing herein shall be construed to exempt the real estate or personal property of such companies from taxation, but the same shall be returned for taxation and taxed as other real estate and personal property in this State is taxed."

Classification of property for purposes of taxation is not permitted in this State.    The property of one person must be taxed just like that of another.    Discriminations and preferences are not allowed.    Property is simply property, and must bear its proportionate share of the public burdens, according to its value, regardless of contentions to the contrary, whether they come from what is called an "infant industry" or from an "industrial giant." As the business of one class of persons or corporations may be quite different from that of another, the constitution has permitted legitimate classification in regard to taxing occupations or businesses; but property of the same value must be taxed to the same extent within the taxing district, and can not be exempted in whole or in part merely because it is owned by one person or corporation or by another.    The constitution declares that "All taxation shall be uniform upon the same class of subjects, and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."    Civil Code, § 5883.    The next section of that instrument (Civil Code, § 5884) specifies what property the legisla-

ture may exempt from taxation. It is then declared that "All laws exempting property from taxation, other than the property herein enumerated, shall be void." § 5886. It is also declared in terms that "The power to tax corporations and corporate property shall not be surrendered or suspended by any contract or grant to which the State shall be a party." § 5887. In *Verdery* v. *Summerville,* 82 *Ga.* 138 (8 S. E. 213), Chief Justice Bleckley pointedly said: "Once for all, the constitution has enumerated the two classes of property, which enumeration the legislature, the courts, and the citizens must recognize as exhaustive. Property, whatever its species, is simply exempt or subject to be taxed. If exempt, it pays nothing; if subject, the amount it shall pay is measured by multiplying the fixed rate into the actual value." In *Atlanta National Building and Loan Ass'n* v. *Stewart,* 109 *Ga.* 80 (7), (35 S. E. 73), it was held that "The General Assembly has no power to declare that an occupation or business tax shall be levied upon certain classes of corporations, which when collected shall be received in lieu of all other taxes upon the property of such corporation." If the act of 1907 sought to do this, it would doubtless be unconstitutional, as was declared by the presiding judge in the opinion filed by him.

The ruling in *Georgia Railroad and Banking Co.* v. *Wright,* 125 *Ga.* 589 (54 S. E. 52), to the effect that the General Assembly is not required by the constitution to impose a tax on shares of stock in domestic corporations where the property of such corporations is taxed in the hands of the company (though they may do so), on the ground that a share of stock is in the nature of a symbol showing the interest of the shareholder in the company and its property, and that taxation of both the property and the symbol of interest in it would practically amount to double taxation, has no application to this case. A creditor is not a joint owner of property with his debtor, nor is the evidence of indebtedness a symbol of an interest in the debtor's property. If so, then all bankers, brokers, and money lenders, in the absence of express legislative mention of the subject, most likely would decline to pay taxes on the notes and credits held by them, on the ground that their debtors had paid taxes on the property held by the latter. Nor is there any similarity between this question and the one whether the constitution, in referring to property for taxation, intended to include public

property or the State's own obligations or those of its subordinate divisions in the nature of instrumentalities of government. *Penick* v. *Foster*, 129 *Ga.* 217 (58 S. E. 773, 12 L. R. A. (N. S.) 1159). These decisions do not control or affect the present case.

What has been said is controlling, and further discussion of details would be useless.

*Judgment affirmed. All the Justices concur.*