## Inter-Southern Life Insurance Company v. Milliken, Tax Receiver, et. al.

(Decided September 27, 1912.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

1. Corporations—Action to Enjoin Collection of Taxes—Situs of Property—Place Where Business Is Done.—Appellant corporation sued to enjoin the City of Louisville from collecting certain taxes on the ground that the village of Prospect, in Jefferson County was its home office. Under its original articles, it had denominated Louisville as its home office but by amendment to its articles it had designated the village of Prospect as its home office. The evidence developed that the only office at Prospect was a part of a room a bank had let to the company; that no officer or clerk was kept there; that it advertised itself as a Louisville company; that all of its records were kept in its Louisville office, and that after the filing of the amended articles, the business was conducted in Louisville the same as before. Held, That this testimony leaves no doubt but that the company in essentially all of its business transactions, and in fact, was a Louisville corporation, and that the designation of the small village as the home office was done for no other purpose than to have that place fixed as the situs of the company's property for taxation. As all of these attributes of the company's life were done in Louisville, its property must be assessed for taxation in Louisville.

2. Same—What Controls for Purpose of Taxation.—It, is not the mere naked denomination of a place as the home office that controls in the matter of corporate taxation, but the facts as to where the corporation maintains its home and conducts its business.

3. Same—Belief as to Legal Rights.—While the course of the officials of the company in attempting to change the home office

was no doubt taken in the belief that they were within their legal rights, in view of the evidence, the company's property is subject to be assessed for taxation in Louisville and not elsewhere.

BENNETT H. YOUNG, MARION W. RIPY for appellant.

JOSEPH S. LAWTON, CLAYTON B. BLAKEY for appellee.

OPINION OF THE COURT BY JUDGE WINN—Affirming.

The appellant, the Inter-Southern Life Insurance Company, brought this action below to enjoin the city of Louisville and its tax collector from collecting taxes, based upon an assessment as of September, 1910, upon some $128,000 of personal property belonging to the company. The company, under its original articles of incorporation, had denominated Louisville as its home office, but by amendment to its articles, filed in January, 1909, it had designated the unincorporated village of Prospect, in the county of Jefferson, as its home office. The position of the company in the litigation was that these properties were taxable at Prospect, while the position of the city was that they were taxable in the city of Louisville; that the company in reality maintained its principal place of business and kept its home office there; and that the change in the articles of incorporation denominating Prospect as the home office was but a subterfuge or device to escape the payment of taxes in Louisville. Upon preparation and trial the chancellor adjudged that the city's position was correct and dismissed the plaintiff's petition. From the judgment of dismissal this appeal is prosecuted.

The evidence developed that the company's only office at Prospect was a part of a room which the Bank of Prospect had let to the company; that the company kept no officer or clerk at Prospect; that it advertised itself as "Louisville's strong, clean, progressive company;" that all the company's records were kept in and all accounts due the Louisville office; that after the change of the place of business of the company as denominated in the amended articles of incorporation, the business was conducted in Louisville the same as it had been before; that the company had ten or twelve offices, its executive offices in the Lincoln Bank Building in Louisville; that that was the largest office the company had in

the country; that no books or records were kept at Prospect, save possibly the record of the stockholders' meetings; that the only business done at the office at Prospect was a stockholders' meeting there in January, 1910, and in January, 1911; that the first of these meetings at least was adjourned from the Prospect office to the Louisville office, where the actual business of the stockholders' meeting was done; that the company, through the channel of a separate holding corporation, the Inter-Southern Building Company, was building in Louisville a large office building, into which it was putting some $700,000, to be known as the Inter-Southern building, and that there the business of the company was to be conducted. The company's brief before us concedes that no business of the company has been transacted at the Prospect office except the annual meetings of the stockholders, at which directors were elected. This testimony and this concession leave no doubt in the mind but that the company in essentially all of its business transactions, and in fact, was a Louisville corporation. And the conclusion is inescapable that the denomination of the small village, remote from the business center, as the home office of the company was done for no purpose other than to have that place fixed as the situs of the company's property for taxation. The legal proposition therefore presents itself as to whether the naked statutory denomination of the village of Prospect as the home office is controlling for the purposes of taxation, or whether the truth about the matter shall prevail and the property be taxed where the company really maintains its home and transacts its business. We will first take up and discuss the general authority from the Union, which is not entirely in harmony upon the subject; and then will investigate the Kentucky cases, which are argued by the company as controlling in its favor.

Passing then for the time being the Kentucky cases which have a more or less direct or remote influence upon the question, we take up first the authority of text writers and other jurisdictions upon which the company relies. The authority first to be noticed is 37 Cyc., 959. The text runs as follows:

"A corporation has its domicile for the purpose of taxation at the place where its principal business office is located; and if the law requires the certificate of incorporation to state where such principal office shall be

located, it is ordinarily conclusive on this point and fixes the place for taxing the company's property, unless its residence has been changed pursuant to some statute, although some decisions hold that if no business is transacted at the nominal principal office except the meetings of stockholders and directors, while all the company's executive and financial business is done at another place, it is to be taxed at the latter place.''

It is to be noted that under the declaration of this text the taxing place is the place where the principal business office is located, but that in some jurisdictions the location of this principal office is fixed arbitrarily by the declaration of the corporate articles, while in other jurisdictions the ascertainment of the location of the principal place of business is an ascertainment of fact determinable, not by some fictional or arbitrary declaration of the company, but by the truth itself, ascertained by evidence as any other truth is ascertained. In support of its statement that the certificate of incorporation is ordinarily conclusive as to the location of the home office, the text cites a number of cases from New York and one from Ohio. These are the cases outside of Kentucky upon which the appellant relies here; while the declaration of the text that other jurisdictions hold that the true place of business is the taxing place is supported by cases from Michigan, New Hampshire and Wisconsin, which cases are relied upon by the appellees. These sundry cases will be discussed further along. The line of differentiation is made clear by the text and by the two lines of cases supporting the different theories named in the text. The appellant, of course, relies solely upon so much of the text as observes that generally the denomination of the place in the articles of incorporation is conclusive.

The appellant next depends upon the statement in 27 Am. & Eng. Ency., 927, that ''where it is required that a certificate of incorporation must designate the place where the principal office of the company is to be located, it has been held that this establishes the residence of the corporation for the purpose of taxation.'' In the foot note to this text, as supporting the statement that it has been held that the statutory designation is conclusive, are cited the New York cases and the Ohio case above referred to as cited in Cyc., and supporting the appellant's side of the controversy. It is to be ob-

served that the text in neither of the encyclopedias named sets itself out to be any arbitrary exposition of the law, but that it does nothing more nor less than to state in the one case the conflicting theories of the different courts, and in the other to set out the theory of the appellant here, with no more authoritative statement than that that position has been held by the courts of New York and Ohio. The writer in the American & English Encyclopedia is particularly careful against laying down any fixed or definite rule upon the subject of the situs for taxation of the personal property of corporations. He observes that the broad propositions sometimes made by text writers concerning the subject should be cautiously used with reference to the statutory provisions and policy of the courts of the particular jurisdictions; that it should be borne in mind that the law of taxation is purely statutory, and that the place and subjects of taxation are dependent on the statutory provisions of the particular States. We find, therefore, in the two encyclopedias nothing of certainty as authority for or against the appellant's position.

Appellant relies upon the case of Western Transportation Co. v. Scheu, 19 N. Y. App., 408, one of the cases cited in the footnotes in Cyc. and Am. & Eng. Ency. as set out above. This case is squarely in point for the appellant. It holds that where the statute required the designation in the organic certificate of the company's charter of the place where its principal office is to be situated, such designation in the certificate is conclusive as that of the principal office of the company; that under a statute which provided that the personal estate of every corporation should be assessed at the place of its principal office, or place for transacting the financial concerns of the company, the charter fixation of the company's principal office of necessity taxed its property at such office; and this notwithstanding the fact that practically the entire annual business, amounting to some several hundred thousand dollars, was done in Buffalo, and that it was shown by the evidence that the object of the company in designating its principal office at Tonawanda was to avoid taxation in the city of Buffalo. The court remarked that unless the Legislature intended the certificate to be conclusive, it was difficult to see any adequate motive for requiring the statement to be made; that it was in no manner essential to the

existence of the corporation that the place of its principal office should be fixed, or even that it should have any such office. The writer remarked that there were obvious reasons, however, why it was expedient that corporations should be deemed to have a fixed location for certain purposes, among which was that of taxation; and that if this question were left open to parol proof, serious difficulties and embarrassments might arise; and that to avoid such difficulties and disputes was perhaps one motive in the Legislature for requiring the location to be fixed by the certificate. We agree with the observation that it is expedient that the corporation should have a fixed and definite location, not alone as regards the subject of taxation, but as regards many other matters of public dealing, of the service of process upon it, of the jurisdiction of suits against it, and the like. We likewise agree that if the question were left open to parol proof, serious questions might arise; but serious questions arise in the majority of litigations. The fact that it is difficult and embarrassing to ascertain the truth in a litigation is no reason why the courts should be closed to an ascertainment of the truth. The Legislature might well have had in mind the avoidance of difficulties in this respect by requiring the domicile of the company to be named in its charter; but it doubtless had equally well in mind that the company would designate its true office, and not a fictional one in its charter. Certainly the Legislature could not have had in mind in enacting the New York statute that it could be so used as to permit the company to locate its principal office at one place for the admitted purpose of avoiding taxation in another place where its business was really done. The mind of the New York court upon the subject is apparent from another observation in the opinion; where, in disposing of the argument by the tax collectors founded upon the improper motive of the company in designating a false place of business, it remarked that "it is no more inequitable or immoral for a corporation to do this than for an individual to do substantially the same." Certainly this line of argument is not very convincing. It does not appeal to us to say that corporations might do this inequitable or immoral thing because an individual might do so. Per contra, it seems to us that the writer might very well have said that neither a corporation nor an individual would be permitted to escape

taxation by such a beating about the bush. It is, of course, important that the place where a corporation is liable to be taxed should be known. If it declares in its articles where its principal place of business is and does its business there, there is no difficulty about it; but if it declares one place as its place of business and actually does its business at another, with the purpose of escaping taxation at its actual place of business, it should not be heard to complain that it is subjected to litigation, embarrassment or inconvenience. The New York case is not inviting in its argument, nor to our mind sound in its conclusion.

Appellant next cites the case of Union Steamboat Co. v. The City of Buffalo, 82 N. Y. App., 351. The steamboat company here, in its certificate of incorporation, denominated the town of Clarkstown, New York, as the place of its principal office. There it held its annual meetings for the election of directors and officers. When the meetings were over the rooms occupied for that purpose were deserted by the company for the rest of the year, except that the sign "The Union Steamboat Company" was left to the solitary watch of the company's principal office. The rest of the company's large business was conducted in the city of Buffalo. The city of Buffalo sought to tax the company there. The court denied the right of Buffalo to tax the corporation, remarking that it had already been decided twice against the city's views in the case of Western Transportation Co. v. Scheu (supra) and the Oswego Starch Factory v. Dolloway, 21 N. Y. App., 449. The opinion writer did not elaborate the argument of the cases, but rested the opinion upon them without discussion. It further remarked that it was adjudged that the purpose for which the principal office was located in Clarkstown was to avoid taxation; but that that fact had been held to be immaterial in the Western Transportation Co. case. The court added: "We have nothing to do with the motive. We can deal only with the fact. If such an evil exists, another authority than ours must provide for its correction." It seems to us the better reasoning to say that courts may concern themselves with motives in litigations of this nature. Certainly the courts can deal with the facts; and in dealing with the facts, the courts should exercise themselves to find what are the facts, not from any arbitrary ex parte statement of the fact

as set forth in the company's self-made charter, but from the facts as actually created by the company in its daily life. And if the facts as made by the company run counter to what was said in its articles of incorporation, it is entirely within the province of the courts to ascertain the facts as they exist and without hesitation to be governed in its decision by the true facts.

The appellant next relies upon Pelton v. Northern Transportation Co., 37 Ohio St., 450. The Ohio case is cited in the foot notes above set out to the encyclopedias. In this case a water transportation company had denominated a village in Cuyahoga County, Ohio, as its principal place of business, though it transacted its business in reality in the city of Cleveland and kept its property there. The city of Cleveland assessed the property for taxation, whereupon the transportation company successfully defended against it. There, as here, the only business done at the suburban village was the annual stockholders' meetings and the election of officers. The statute of Ohio demanded a designation in the articles of incorporation of the place where the principal office should be located. The court remarked that the designation made in conformity to the statute was conclusive, and that the principal office was not to be determined by the amount of business done at the one place or the other. The court does not give any reason why this arbitrary fixation should in all cases be accepted as true, and especially in those cases where the corporation by its conduct makes it untrue. The opinion is based in its terms upon the New York case above commented upon of the Western Transportation Co. v. Scheu. The Ohio writer did remark that a natural person might change his residence for the purpose of avoiding taxation, and that was no reason why a corporation might not do the same—a conclusion with which we entirely agree. But the writer does not remark that in the change of residence by an individual there must be an actual and not a fictional change. An individual certainly cannot maintain from time to time and year to year a permanent residence in one place, and by a mere declaration of his own change his taxable residence to another. The change must be an actual change, true in fact as well as in theory; and so of the corporation. We do not find it essential, therefore, to differentiate the New York and Ohio authority upon the

subject. We believe them to be unsound. No other authority from other jurisdictions is cited by the appellant than that above discussed.

We come now to the line of authority supporting the other view, cited in the foot note to Cyc. upon that side, and relied upon by the appellees. The first case we shall notice is that of Teagan Transportation Co. v. Board of Assessors of Detroit, 139 Mich., 1. In this case the articles of incorporation of the three corporations, the tax liability of which was in litigation, designated certain small townships or villages as the location of their general offices. No regular offices were kept at these places. There the annual stockholders' meetings were held, and in one instance there a directors' meeting was held. The business of the companies was done in Detroit. So much of the Michigan statute as it is necessary to point out provided, in substance, that the corporation's property should be assessed at the place where its office was designated to be in its articles of incorporation, provided it actually did its business there; but that if it actually did its business at some other place, then that other place should be the taxation place. This Michigan case, therefore, is not of much value as authority in Kentucky. It did remark, however, in line with our own observation above, that individuals might determine where they would reside and corporations where they do business, but in order to make such place the places of taxation, the individuals must actually reside there and the corporation must actually do business there. The cases of Detroit, &c., R. R. v. Detroit, 141 Mich., 5, and Township of Portsmouth v. Cranage Steamship Co., 148 Mich., 230, cited by the appellees, are in line with the Teagan Transportation Co. case.

The foregoing Michigan cases were written in construction of an act passed by the Michigan Legislature following the declaration of the Michigan court in the case of the Detroit Transportation Co. v. The Board of Assessors of the City of Detroit, 91 Mich., 382. In this latter case, the corporation had by an amendment to its articles of association, denominated the township of Hamtramck as its place of business, where it kept its sign and where the stockholders and directors' meetings were held. It appeared that its business was in reality transacted in Detroit. This city had been originally denominated as the home office of the corporation.

The city took the position that the change to Hamtramck by amendment was not made in good faith, nor true in point of fact; and that after the amendment their place of business continued to be in the city of Detroit. The statute of Michigan demanded that the articles of association should denominate the place where the general business should be located. The corporation claimed, as here, that the location of its office was a question of law, and that the articles of association were conclusive upon the point. In support of its view, it cited the three New York cases and the Ohio case. The Michigan court declined to accept the reasoning of those cases, and adopted what appears to us to be the more reasonable one. It remarked that a citizen has the right to reside in the country and do business in the city, but that such a residence must be an actual residence with relation to taxation; that one could not maintain a nominal residence in the country, with an actual residence in the city, and thus avoid urban taxation; that a corporation in this respect was like an individual—that it could not fix a nominal domicile in the country and yet maintain its actual domicile and business in the city with respect to the escaping of city taxation; and it held the question to be open for actual determination. At this point, we desire to express our concurrence with another view of the Michigan writer, wherein he remarks that this declaration and the articles of incorporation would estop the corporation to say that such place was not its residence for certain purposes, like the service of process and the like, but that where it was apparent that the sole purpose was to avoid taxation by the denomination of such an office, and its real business was done elsewhere, its property might be taxed at the real place of its business. It was following this declaration that the Michigan statute was amended as above remarked. The amendment was so framed as that these water transportation companies might by their statutory declarations actually fix some rural place as their home office, and do business elsewhere; and yet have their property taxed at the rural place. The Michigan court, in the case in 139 Mich., supra, held this act to be, to the extent named, unconstitutional.

The next case cited by the appellees is that of Milwaukee Steamship Co. v. City of Milwaukee, 83 Wis., 590. This case is of some value to appellees in that it

discusses the question of fact as to where is, and what constitutes the principal office. The statute in the Wisconsin case, however, as discussed by the court, did not require the corporation to denominate its principal office or place of business, and such a declaration in the company's charter was held to be surplusage as to its situs for taxation. The Wisconsin court cited, however, the Michigan case of Detroit Transportation Co. v. Detroit Assessors, 91 Mich., 382, supra. The judge who wrote the case then commented upon the New York and Ohio cases and said that had the Wisconsin statute required the denomination of a principal office in the charter of incorporation, he, the judge, was not prepared to intimate that such denomination would be conclusive of the question, notwithstanding the authorities from the two States named.

The next case relied upon by the appellees is that of Woodsum Steamboat Co. v. Sunapee, 74 N. H., 495. The steamboat company denominated the city of Concord as its place of business. About one-half of the plaintiff's business was done in Sunapee, and the rest in Newbury and New London. Sunapee taxed the boats of the plaintiff and this litigation arose. The court remarked that the fundamental error in the steamboat company's argument was in the assumption that its place of business was determined by the declaration in its articles of agreement without regard to the fact as to where it was doing business; that the statute demanded a truthful statement, the duty to make which was not performed by the statement of an imaginary one; that it would be very likely true that the corporation would not thereafter be heard to deny its stated situs, especially if others had acted upon the statement in good faith, but that this would be far from saying that its own representation was binding upon those who were in no way parties to it. The case from 91 Mich., was then cited. The court then remarked that the New York case of Union Steamboat Co. v. Buffalo, and the Ohio case of Pelton v. Northern Transportation Co., might be distinguished by differences between the New York and New Hampshire statutes. The court added, however, that "insofar as they hold that a corporation can locate a fictitious place of business and thereby conclude other parties, they run counter not only to the decided law of this State, but also to that of other jurisdictions."

The appellees cite and rely upon the case of Georgia Fire Ins. Co. v. Cedartown, 134 Ga., 87; but the case is not sufficiently in point to need especial notice.

In section 572a, sixth edition, Cook on Corporations, it is said:

"Where a corporation is really located in the city and does all its business there, but its articles of incorporation state its principal place of business as being in an adjacent town, the sole object being to evade taxation, the court will hold that for taxation purposes its principal place of business is in such city."

Clark & Marshall on Corporations, section 293a, thus state the rule:

"Where a corporation, for the purpose of evading taxation, states in its articles of association or certificate of incorporation, that its principal place of business is in a certain place, when in reality it is located and does its business in another place, the latter place may be treated as its place of business for the purpose of taxation."

Both appellant and appellees make some comment upon the note discussing this subject appended to the Teagan Transportation Co. case as reported in 69 L. R. A., 431. The annotator, however, does no more than to cite the cases which we have above discussed, with others from the same jurisdictions, remarking the conflict between the New York and Ohio doctrine upon the one hand and that of Michigan and Wisconsin upon the other.

We have made independent search for other direct and important authority, but without finding it. Our conclusion upon the whole matter is in line with the Michigan doctrine, which permits the truth to be ascertained, and is against the New York and Ohio doctrine, which arbitrarily accepts as true the corporation's self-made statement of the fact.

There are left to be discussed the Kentucky cases, in order to ascertain whether they run counter to, and wherein they impinge upon the conclusion we have reached from our investigation of the authority from other States.

At this point, it is proper to insert the distinguishing fact upon which the case turns. Mr. John H. Leathers, who was president of the company at the time of the charter amendment designating Prospect as its princi-

.pal office, testified that the change was made to avoid
.Louisville taxation, which as the company thought, was
unequal and unjust. We have, therefore, the admitted
.fact that the designation of Prospect was to avoid city
'taxation, the fact conceded by appellant's brief that the
·only business ever done at Prospect was the holding of
.the annual stockholders' meeting, and the fact developed
.by the testimony that after the change the company
transacted its business at its general offices in Louisville
just as before. These facts are significant in their bear-
ing upon the principal Kentucky case relied upon by ap-
pellant, which we now proceed to discuss.

City of Covington v. Standard Oil Co., 137 Ky., 837.
.This case had up the question of the situs for taxation
.of the intangible property of the Standard Oil Co. of
.Kentucky. The record showed that the city of Louis-
ville was designated in the company's charter as its
.principal place of business, and that no change had ever
.been made in the charter designation. The effort in the
.action was by the city of Covington, where the ·com-
pany kept an office, to subject to taxation there its prop-
,erty of the character named. Covington proceeded
upon the theory that it was in reality the principal place
·of the company's business. The company, however, es-
tablished that it had made due return of its tax list of
.such property to the city of Louisville, and had duly
paid the taxes thereon. Upon this state of fact, it was
held here that Covington had not the right to enforce
the collection of taxes upon this same property. The
court's opinion founded itself upon the cases of Lang-
.don-Creasey Co. v. Trustees, 116 Ky., 562, and Wren v.
.Boske, 72 S. W., 279, the general spirit whereof was
.neither more nor less than that intangible property is
.to be taxed at the home of its owner. It was then re-
.marked in the Standard Oil case that as the company
had designated as its principal place of business in its
charter the city of Louisville, that designation was con-
·clusive; and that for fiscal purposes a corporation could
.have but one domicile, the place so designated in its
·charter under our statute. These are the Kentucky ex-
·pressions which the appellant puts forward as controll-
.ing in its case. But the appellant fails to remark that the
·expressions used followed the significant statement by
.the court that there was nothing in the record tending
.to show any effort by the Standard Oil Company to

avoid taxation, but only an effort to avoid being taxed twice on the same property. The spirit of the opinion must be gained from the whole opinion, and not from an isolated excerpt from it. If, said the court, there was nothing in the record tending to show that the company was seeking to avoid taxation, then its charter designation of its principal place of business was conclusive, and there for fiscal purposes must be its domicile. But the other side of the court's mind is equally clear from a fair and impartial interpretation of that case; and that is that where the company denominates in its charter not the true, but a fictional home, for the very purpose of avoiding taxation, then the domiciliary recitation in its articles, put there for an evasive purpose, will not be conclusive in the company's favor. Such a designation in the absence of subterfuge and evasion, should be conclusive, not so much because the company has so stated its domicile, but because the company has truthfully so stated its domicile. It should be prima facie always evidence in the company's favor, because it, in discharging its requisite corporate statutory duty in designating of record its principal office, naturally will, until the contrary is shown, be supposed to have stated the truth. As remarked heretofore, such a designation should be conclusive as an estoppel against it in all matters where others have acted on the faith of it; for having set out a statement as the truth, in compliance with a statutory prerequisite to its corporate life, it will not be heard to say in its own favor that its own definite declaration was not the truth. The plain intent of the opinion under consideration was to apply its rule there where there was ''nothing in the record which tends to show that appellee (Standard Oil Co.) is in any way seeking to avoid taxation.'' In the case at bar the president of the company testified without reservation that his company's purpose in designating Prospect as its home, was to avoid city taxation. How then, can it be claimed that the Standard Oil Company case is conclusive in this appellant's favor?

Appellant relies also upon the case of Commonwealth v. Southern Pacific Co., 134 Ky., 417. That case did not question whether Beechmont was the true and lawful home of the Southern Pacific Company; but accepting that point as the home, held certain property taxable there. The Southern Pacific Company did no

part of its railroad business in Kentucky. The case throws no light on the question here.

As of the Standard Oil Co. case, so it is to be said of the case of Langdon-Creasey Co. v. Trustees of Owenton Common School District, 116 Ky., 562, that the court expressly remarked the absence of any effort to evade taxation.

Newport & Cincinnati Bridge Co. v. Wooley, 78 Ky., 523, is relied upon by appellant. In that case, it is said that ''a corporation cannot have two domiciles or residences at the same time. It obtains a residence not by its own act, but by legal authority which fixes the requisites of residence,'' an entirely correct statement of abstract principles. Unquestionably, it draws its residence, or more properly phrased, its right to a residence, from legal authority, and it is likewise true that legal authority fixes the requisites of residents; that is, the State gives it the right of life and fixes the requisites of formation and conduct under which the corporation's right to a residence arises. In other words, the word, domicile, as used in the quotation, supra, from the Newport & Cincinnati Bridge Co. case, meant the State of its domicile, which is made further manifest by the fact that the point there under discussion was whether that corporation was a Kentucky or an Ohio corporation. It is equally true, however, that a corporation can have but one domicile within the confines of any given State, though it may have many places of business, just as it may have a domicile within one State and do business in many others. Under the statute under which the appellant gained its existence, it was given the right to select and designate the place of its domicile within the State; but clearly, as indicated in the Standard Oil Co. case and the Langdon-Creasey case, such a domicile selected and designated by it would not be conclusive as against the taxing authority, when its declaration of domicile was made for the purpose of avoiding taxation.

This disposes of the authorities relied upon by the appellant. As remarked above, the properties of corporations generally are taxed under the same general principles which govern the taxation of the properties of individuals. As was said in the case of Montgomery v. City of Lebanon, 111 Ky., 646, the intention of a party to hold or acquire his domicile is always a very material fact, and is entitled to much weight in determining what

is his legal domicile. But, notwithstanding this, the manifest actions and conduct of the party may be properly held to fix and determine his true domicile despite his declared intention. This is as well true of a corporation in ascertaining its proper situs for taxation as of an individual. Neither the individual nor the corporation will be permitted to conclude the taxing authorities by his or its ex parte declaration of domicile; but both the individual and the corporation will be held answerable and subject to taxation at the place where the facts fix his or its residence.

The observations of this court in the case of City of Lebanon v. Biggers, 117 Ky., 430, are illuminating in the case at bar. It is there remarked that every person must have a domicile, and that he can have but one; but that when once established it continues until he renounces it and takes up another in its stead. In the case at bar, the appellant had established its residence in Louisville. It afterward renounced that domicile, but it never took up another in its stead. The court quoted from Cooley on Taxation (3rd edition), page 641, as follows:

"No exact definition can be given of a 'domicile.' It depends upon no one fact or combination of circumstances, but upon the whole, taken together, it must be determined in each particular case. * * * It depends upon the preponderance of evidence in favor of two or more places; and it may often occur that the evidence of facts tending to establish the domicile in one place would be entirely conclusive were it not for the existence of facts and circumstances of a still more conclusive and decisive character, which fixed it beyond question in another."

So in the case at bar the company's declaration of Prospect as its domicile might be held to be a definite ascertainment of that fact, were it not for the existence of the concessions made and facts developed of an entirely conclusive character that its domicile was in fact in the city of Louisville.

The general rule is that the fact of a person's being for a length of time at a particular place is prima facie evidence that he is domiciled at that place, and it lies on those who say otherwise to rebut that evidence, as is well said by Lord Thurlow in Bruce v. Bruce, 2 B. P., 229; but there is a natural distinction which arises here

between natural persons and corporate artificial persons created under our statute. Of them we think it proper and just to hold that when the statute has declared that they shall denominate a place of domicile, the place denominated should be accepted prima facie as the domicile. But it would be flying in the face of our sense of right to say that any person by his mere ipse dixit can conclude the taxing authorities as against him. To so hold would be to say that the arbitrary statement of an untruth was conclusive as against the truth. The courts are always open to the ascertainment of the truth, and it would be a sad retrogression in modern jurisprudence to permit ourselves to go back to what we consider the unwise and unfair doctrine, supra, declared by the courts of New York and Ohio. In reaching this conclusion we are not, as is argued for the appellant, running counter to any former declarations of this court. Happily, it has not said that where good faith was wanting or the effort was to avoid taxation the charter designation of domicile was conclusive.

The appellant, like an individual, has the entire right if it so desires, to avoid the payment of taxes in Louisville by making its home at Prospect; but its domicile there must be a fact and not a fiction. While it actually lives in Louisville and draws from that cosmopolitan center the various benefits which must accrue to it from the surroundings of a large city, having no other principal home or domicile, it must pay its taxes there. It must pay its taxes like an individual pays his taxes—where the home is. In this connection, some comment may be made upon an argument by appellant upon which it lays much stress. It argues that many of the rich and influential merchants and business men of Louisville actually maintain their residence in the country and that, therefore, their intangible personal property escapes taxation in the city. This is true, but it is true because the home of the owner is the situs of taxation of his intangible personal property. A corporation likewise is to be taxed at its home. Its home, however, cannot be ascertained like that of an individual by such considerations as the place of his eating and sleeping, rearing his family, casting his vote, and the like. The corporation's place of abode must be determined by other considerations. For purposes of taxation, its domicile is to be ascertained not by where it eats and

sleeps, because it does neither, but by the other essential attributes, customs and habits of its daily life. We must look to these facts, its use of its charter functions and privileges, and where they are exercised, to determine its home. Where these vital acts of its existence are daily done and transacted, there is its taxing home. As above observed, all of these attributes of the appellant's life were done in Louisville; and there, therefore, is its taxation home. It is well again to remark that it may do business in many places, and yet all of its business naturally must centralize around some located nucleus.

Our position need occasion no concern to the corporate industries of our State, which have selected their homes in fact and not in theory, and there have made their taxing returns and have paid their taxes along with the common run of people. Those upon the other hand, if others there be, which have denominated one place, a fiction, and have maintained their homes at other places as a fact, thereby avoiding taxation, can come within the law and submit themselves to taxation as other people and other corporations do. And if the corporation believes that taxes in any given place are unjust or unequal or too onerous to be borne, it has the right, of change to some other place, provided the change be actual and not a subterfuge. No perfect taxing system has ever been devised. It is doubtful whether any ever will be devised that will prove satisfactory to the various properties, various interests, various peoples and various corporations affected by it; but with that uncertainty and with the hardships real or imaginary of taxation in any given place, we are not at liberty to concern ourselves in this case.

The candor with which the officials of the appellant spoke out about its purpose, and the candid admission in the brief of counsel leave no doubt in the mind that the course taken was believed by all parties to be strictly within their legal rights. Our comments upon subterfuge upon the one hand and the truth upon the other, and the like, were necessary to make apparent the distinctions of the law.

The judgment of the trial court is affirmed. Whole court sitting.