## NATIONAL CASH REGISTER CO., Plaintiff,

### v.

## K. W. C., INC., Defendant.

### Civ. A. No. 75–54.

United States District Court, E. D. Kentucky.

May 5, 1977.

---

Paul J. Vesper, Cincinnati, Ohio, of counsel; James J. Cunningham, Cincinnati, Ohio, for plaintiff.

Stephany Tsanges, John C. LaVelle, Covington, Ky., for defendant.

SILER, District Judge.

In this bankruptcy case, appellant, National Cash Register Company (NCR), appeals from the judgment of the Bankruptcy Court, entered on January 26, 1976, dismissing NCR's complaint to reclaim certain property (and sustaining the trustee's complaint objecting to the allowance of NCR's claim and seeking to sell the property in question as an asset of the bankrupt's estate for the benefit of creditors generally).

The sole issue on appeal is whether the Bankruptcy Judge erred as a matter of law in holding that a corporation's "residence," as that term is used in KRS 355.9–401(1)(c) (hereinafter "the statute"), is "the location of its registered office and not the location of its place of business." (Bankruptcy Court's opinion, p. 4.)

National Cash Register Company contends that Kentucky law and the policies behind Kentucky's local filing system require that a corporation's "principal place of business" be deemed its "residence" for purposes of the statute. [The Court also notes that NCR, in a memorandum in support of its motion to set aside the Bankruptcy Court's judgment, appears to argue that a corporation's "residence" is its "place of business" (versus "*principal* place of business").]

The facts, as found by the Bankruptcy Court, are not in dispute. The bankrupt, K.W.C., Inc. (KWC), was incorporated in 1972 as a Kentucky corporation. Its articles of incorporation, filed in the Campbell County Court Clerk's office, listed the same Campbell County, Kentucky, address for both the corporation and its process agent. (The listed process agent was KWC's sole incorporator, although he later sold stock to others.) KWC thereafter acquired a Cattleman's Restaurant franchise and began doing business at a single location in Kenton County, Kentucky. Later, NCR sold KWC certain equipment under a monthly installment plan and the financing statement covering the equipment was filed in the Kenton County Court Clerk's office. On February 7, 1975, KWC filed a petition in bankruptcy. Its assets have been sold, except for the property in which NCR claims a security interest: three NCR cash registers, logic unit, beverage dispenser, bottle racks and auxiliary logic board.

The parties agree that the statute governs the place for filing in order to perfect a security interest in the goods in question. The whole case turns, therefore, on the location of a corporation's "residence." If a corporation's "principal place of business" is its "residence," NCR has a perfected security interest and is entitled to secured creditor status. If the Bankruptcy Judge's interpretation is correct, the trustee will prevail.

While the issue is easily stated, it is not so easily resolved. There are, apparently, no Kentucky cases on this point. As with many other state statutes, there is no reliable legislative history from which the Court can glean the legislature's intent on this question. Magnifying the importance of this case is the need of Kentucky citizens for certainty and predictability in the conduct of their business affairs.

The Court is aware that, since the facts are not in dispute, it is free to examine the legal conclusions of the Bankruptcy Judge and to reject them if they are erroneous. *In re Amex-Protein Development Corp.*, 504 F.2d 1056, 1058 (9th Cir. 1974). However, the Court agrees with the Bankruptcy Judge's interpretation of the statute and, for the reasons stated *post*, affirms the judgment appealed from.

## I. LEGISLATIVE HISTORY

The statute provides in part:

(c) [The proper place to file] in all other cases, if the debtor is a resident of this state in the office of the county court clerk in the county of the debtor's residence, if the debtor is not a resident of this state but has a principal place of business in this state, in the office of the county court clerk in the county where the nonresident has a principal place of business, if the debtor is a nonresident of this state and has no principal place of business in this state then in the office of the Secretary of State  .  .  ..

The parties agree that KWC is a resident Kentucky corporation. Thus, the narrow question before the Court is the place of residence of an admittedly Kentucky corporation within the meaning of the statute.

### A. *Uniform Commercial Code*

Many, if not most, sections of Kentucky's Uniform Commercial Code, KRS Ch. 355, were adopted verbatim from corresponding sections of the 1957 official text of the Uniform Commercial Code (hereinafter UCC), drafted by the Commissioners on Uniform State Laws and the American Law Institute. See Introductory Note to KRS Ch. 355 (Banks-Baldwin, 4th ed. 1969). Thereafter, the Kentucky legislature has, from time to time, amended KRS Ch. 355 to conform to later amendments of the Uniform Act. *Id.* (All citations to the UCC are to the 1957 version unless otherwise indicated.) Thus, it is instructive, in seeking to determine the legislature's intent in enacting the statute, to consider those provisions of the UCC version of the statute which the legislature rejected and those subsequent amendments to the UCC not adopted by the legislature.

The drafters of UCC § 9–401(1) drafted three alternative forms of that provision from which an enacting state could choose, if it desired, the one most suited to its needs. The second and third alternatives to the UCC subsection contain identical provisions in subsections (1)(a) and (b). The Kentucky legislature adopted these provisions verbatim as KRS 355.9–401(1)(a) and (b). However, the Kentucky legislature failed to adopt either the second or third UCC alternative subsections (1)(c), providing for central and dual filing, respectively, in all cases not covered by subsections (1)(a) and (b).

The third alternative, UCC § 9–401(1)(c) is most like the one adopted by Kentucky:

(c) in all other cases in the office of the [Secretary of State] and in addition, if the debtor has a place of business in only one county of this state, also in the office of  .  .  . of such county, or, if the debtor has no place of business in this state, but resides in the state, also in the office of  .  .  . of the county in which he resides.

This subsection of the Uniform Act, like Kentucky's version, does not distinguish between individual and corporate debtors. As in the case *sub judice,* this oversight has created problems with determining the residence of corporate debtors.

The response of the drafters of the Uniform Act was to propose, in the 1972 Amendments to UCC § 9–401, the following subsection (6):

(6) For the purposes of this section, the residence of an organization is its place of business if it has one or its chief executive office if it has more than one place of business.

The Kentucky legislature has not adopted this amendment.

In failing to adopt either the second or third alternative versions of UCC § 9–401(1)(c), the Kentucky legislature was merely seeking to preserve existing Kentucky law. Legislative Research Commission, *Uniform Commercial Code: Analysis of Effect on Existing Kentucky Law* at 378–79 (1957). The former Kentucky law on this point was contained in KRS 382.670(1) (1953) (repealed as of July 1, 1960, the date the statute went into effect), which provided in part:

(1) Chattel mortgages, in order to be recorded, shall be filed in the county where the mortgagor, if a resident of the state, resides at the time of the execution thereof. If the mortgagor is not a resi-

dent of the state, the mortgage shall be filed in the county where the mortgaged property is located at the time of the execution of the mortgage.

. . . . .

The use of residence in KRS 355.9–401(1)(c) is also consistent with its use in KRS 355.9–401(1)(a).

## II. PRIOR KENTUCKY LAW

### A. *Attorney General's Opinion*

National Cash Register Company relies heavily on an opinion of the Kentucky Attorney General (O.A.G. No. 63–557, June 25, 1963, reported in 1 UCC Reporting Service 705 (1965)). In that opinion, the Kentucky Attorney General gave an opinion, based on certain Kentucky tax cases, that, as used in the statute, a Kentucky corporate debtor's residence is the county where it has its principal place of business and "not necessarily where the Articles of Incorporation state." *Id.* at 706.

While the Court respects the Kentucky Attorney General's opinion and gives it weight, *Bostick v. Smoot Sand & Gravel Corp.*, 260 F.2d 534, 541 (4th Cir. 1958), for the reasons stated *post*, the Court does not find it controlling here.

### B. *Taxation Cases*

In *City of Covington v. Standard Oil Co.*, 137 Ky. 837, 127 S.W. 480 (1910) (hereinafter *Covington*), cited by the Attorney General, the Kentucky Supreme Court (*vice* Kentucky Court of Appeals) held that a Kentucky corporation's principal place of business or domicile, for *fiscal* purposes, is the place "designated in its charter or articles of incorporation."

The *Covington* case was modified by the later case of *Inter-Southern Life Ins. Co. v. Milliken*, 149 Ky. 516, 149 S.W. 875 (1912) (hereinafter *Milliken*), which holds that, for purposes of taxation, the place listed as the corporation's "home office" must be, in effect, its "domicile." [As applied to corporations, Kentucky courts often use the terms "domicile" and "residence" interchangeably, see, *e.g., Newport & Cincinnati Bridge Co.*

*v. Woolley*, 78 Ky. 523 (1880). However, when individuals are involved, the distinctions between "domicile" and "residence" are often emphasized. See, *e.g., Russell v. Hill*, 256 S.W.2d 508, 509 (Ky.1953).] That Court, while recognizing that a corporation may do business at many locations, held that a corporation's domicile, for taxation purposes, is where the "vital acts of its existence are daily done." *Id.* at 149 Ky. 533, at 149 S.W. 882. These "vital acts" include the corporation's use of its "charter functions and privileges" with reference to the place where they are exercised. *Id.*

The *Milliken* case represents an understandable retreat from the *Covington* rule. The sole purpose of the *Milliken* corporation's amending its articles to change its "home office" to another city was, apparently, to avoid taxation. Thus, the problem the *Milliken* court sought to avoid is not present in this case, or in this class of cases. Where business and commerce are concerned, the *Covington* rule is preferable because it lends certainty and predictability to an otherwise uncertain process.

### C. *Venue Cases*

National Cash Register Company also relies on certain Kentucky cases interpreting a corporation's "residence" as used in Kentucky venue statutes.

Illustrative of the venue cases is *Tufts v. Chesapeake & Ohio Ry.*, 401 S.W.2d 58 (Ky. 1966) (hereinafter *Tufts*). There, the Court had to determine the place of "residence" of a foreign corporation for purposes of fixing venue under KRS 452.455 in a suit under the Federal Employers' Liability Act. The Court concluded:

> It is still sound law that if a *foreign* corporation has a chief office or place of business in Kentucky, that should be *deemed* its residence. (Emphasis supplied.)

*Id.* at 59–60.

Seizing upon the words "chief office or place of business," NCR relies on the *Tufts* case as authority for its contention that a corporation's residence is its principal place of business. This reliance is misplaced.

The phrase "chief office or place of business" is not synonymous with "principal place of business," as NCR uses the latter phrase.

The *Tufts* court relied on *James v. Nashville, C. & St. L. Ry.*, 310 Ky. 616, 221 S.W.2d 449 (1949) (hereinafter *James*). The *James* court quoted with approval the following statement from *Knight v. Pennsylvania R.R.*, 264 Ky. 412, 416, 94 S.W.2d 1013, 1015 (1936):

> Section 732 of the Civil Code of Practice, prescribing rules for construing the provisions of the Code of Practice, in subsection 32 declares that the word "reside" means, with reference to a corporation, its "chief office or place of business." Subsection 33 defines who are and the rank of chief officers and agents of a corporation in this connection. *The residence of a corporation is regarded as the county in which its chief officer or agent resides when the action is commenced.* . . . *No distinction is made between the residence of a domestic and of a foreign corporation.* (Emphasis supplied.)

Those considered to be the "chief officers or agents" of a corporation were set forth in the old Code as follows:

> The chief officer or agent of a corporation which has any of the officers or agents herein mentioned is: First, its president; second, its vice-president; third, its secretary or librarian; fourth, its cashier or treasurer; fifth, its clerk; sixth, its managing agent.

*Carroll's Kentucky Codes Annotated*, § 732 (33) (Banks-Baldwin, 10th ed. 1948).

Therefore, to the extent that the *Tufts* rationale is applicable to this situation, it supports the Bankruptcy Judge's conclusion rather than NCR's contention.

Many courts apply a rule similar to the one in *Covington* to venue cases. See Annotation, 175 A.L.R. 1092 (1948).

## III. POLICIES

The purposes and policies of KRS Ch. 355 are set out in KRS 355.1–102(2) which provides:

> (2) Underlying purposes and policies of this chapter are
>
> (a) to simplify, clarify and modernize the law governing commercial transactions;
>
> (b) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties;
>
> (c) to make uniform the law among the various jurisdictions.

The policy of making uniform the law of the various jurisdictions is not as strong here because the existence of three alternative proposals for UCC § 9–401(1), compounded by the variations adopted by some jurisdictions, necessarily means that the law will be less uniform in this area than in others covered by KRS Ch. 355. In 1972, six states had adopted the first alternative of UCC § 9–401(1), twenty-seven states had adopted the second alternative, and sixteen states the third alternative. White & Summers, *Handbook of the Law Under the Uniform Commercial Code*, at 822 (1972). (Kentucky is listed as having enacted the second alternative "with substantial variation." *Id.* at 822 n.105.)

The policy of simplifying, clarifying and modernizing commercial law is well served by interpreting corporate residence as the place designated in the articles of incorporation.

Under Kentucky law, domestic and certain foreign corporations are required to have both a registered office and a registered agent in this state. KRS 271A.060; KRS 271A.555. The registered office may, but need not be, the corporation's place of business. *Id.* However, the registered agent's business office must be identical to the registered office. *Id.* Thus, the place to file under the statute, *i.e.*, the corporate debtor's residence, is easily determined. Kentucky creditors will not be required, as they would be if NCR's views were adopted, to guess at their peril which, of several places of business located in different counties, is a corporate debtor's "principal place of business." Nor will they find it necessary, in such cases, to file at more than one

place in order to avoid the consequences of a wrong guess. Moreover, if the original filing is correct, such creditors need not be concerned with subsequent changes in the corporate debtor's residence. KRS 355.9–401(3)

The policy of promoting certainty in the recording of mortgages on both real and personal property has been a major influence in Kentucky law. See *Beaver Creek Consol. Coal Co. v. Porter Min. Co.,* 60 F.2d 602 (E.D.Ky.1929), and the cases cited therein. This policy has caused Kentucky courts to prefer the place of residence of the owner of *movable* personal property over the actual location of that property as a place for filing to create a security interest in such property. *Id.; cf.* KRS 355.9–401(1)(a); see also former KRS 382.670(1). There is also language in at least one Kentucky case which indicates that, as to mortgages on personal property, it is "the residence of the mortgagor and not the place of his business that determines the place of filing." *Burbank & Burbank v. Bobbitt,* 157 Ky. 524, 529, 163 S.W. 457, 459 (1914). This case involved an individual debtor, not a corporate one, and it interpreted what is now KRS 382.110(1). Moreover, the court there looked to "the fact of the mortgagor's residence rather than upon recitals or representations of the mortgagor as to his residence." *Burbank & Burbank v. Bobbitt, supra* at 157 Ky. 524, 163 S.W. 459.

However, as another Kentucky Court said:

A corporation cannot have two domiciles or residences at the same time. It obtains a residence not by its own act, but by legal authority which fixes the requisites of residence; and it retains a residence so long as its legal existence lasts in the state whence it received it.

*Newport & Cincinnati Bridge Co. v. Woolley, supra* at 78 Ky. 523. It follows that reference to the exact place of corporate residence should be fixed by reference to the articles of incorporation unless some policy requires that the Court look behind those articles. *City of Covington v. Standard Oil Co., supra.*

## IV. THE STATUTE

Finally, brief reference must be made to the plain language of the statute.

The statutory language used by the Kentucky legislature leads to the unmistakable conclusion that a distinction was intended between the places of filing for resident and nonresident debtors. If "residence" and "principal place of business" are synonymous, the legislature's use of both references is surplusage.

"The general rule of statutory interpretation is that effect must be given where possible to every word in a statute . .." *Wilkins v. Bax,* 262 S.W.2d 663, 664 (Ky. 1953). It is not only possible to do so here, but the Court is of the opinion that, when the statute is construed in light of its purpose and previous Kentucky law, the legislative intent was to distinguish between "residence" and "place of business."

## CONCLUSION

Therefore, the Court will, by separate order of even date, affirm the judgment of the Bankruptcy Court.