**ITT COMMERCIAL FINANCE CORPORATION, Appellant,**

v.

**MADISONVILLE RECAPPING COMPANY, INC. and Watson Brothers Industries, Appellees.**

No. 88–CA–2006–MR.

Court of Appeals of Kentucky.

Aug. 3, 1990.

Joseph A. Hammer, Louisville, for appellant.

Robert P. Moore, Madisonville, for Madisonville Recapping Co., Inc.

Ronald E. Butler, Lexington, for Watson Brothers Industries, Inc.

Before HOWERTON, C.J. and HOWARD and McDONALD, JJ.

HOWARD, Judge.

In this case, the appellant appeals from a judgment of the Webster Circuit Court upholding the findings of fact and conclusions of a special commissioner in which mechanic's liens were determined to have priority over a purchase money security interest. The facts in this case are largely undisputed.

Coal Exchange of Kentucky, Inc. operated a strip mine in Webster County, Kentucky, and all of its equipment was in that county. Coal Exchange, however, had a registered office in Jefferson County, Kentucky.

In September of 1985, the appellee, Madisonville Recapping Company, Inc., performed repairs on and supplied tires for a Michigan loader owned by Coal Exchange. The bill for the repairs and tires was $10,260.62. At about that same time, the appellee, Watson Brothers Industries, Inc., provided services and parts totaling $5,616.00 for repair of the Coal Exchange's loader. Partly because the loader was so large, these repairs were performed at the mining site in Webster County.

Because no payment was made, Madisonville Recapping filed a mechanic's lien against Coal Exchange on December 4, 1985. On December 20, 1985, Watson Brothers asserted its mechanic's lien against Coal Exchange. On December 30, 1985, Coal Exchange filed for bankruptcy in the United States Bankruptcy Court, Western District of Kentucky, and an automatic stay was issued.

The appellant, ITT Commercial Finance Corporation, claimed a purchase money security interest in the loader. On the appellant's motion, the bankruptcy court lifted the stay in order that the appellant could pursue its state court remedies.

Madisonville Recapping filed a complaint on November 5, 1986, against Coal Exchange, Watson Brothers and the appellant. Coal Exchange was subsequently dropped as a party and the only question was the interests of the parties in the loader. The record does not contain any details on this point, but the appellant evidently repossessed and sold the loader.

On April 20, 1988, the special commissioner issued his findings of fact and conclusions of law. The special commissioner concluded that Madisonville Recapping and Watson Brothers had properly perfected their liens and these liens took priority over the appellant's alleged security interest. The special commissioner's findings and conclusions were sustained by the trial court on August 24, 1988.

The appellant first argues that Madisonville Recapping did not have a valid lien.

The lien statement relied upon by the special commissioner was filed by Madisonville Recapping in Webster County. KRS 376.440 requires the lien statement to be filed in the county "in which the owner of the equipment, machine, machinery or motor resides," unless the owner is a non-resident, then the lien statement must be filed in the county where the equipment or machinery is being kept or used.

The appellant argues the question of where a corporation "resides" is answer-

ed by KRS 355.9–401(e) which provides as follows: "A corporation organized under KRS Ch.'s. 271A, 273 or 274 shall be deemed a resident of the county in which its registered office is located, as set forth in its most recent corporate filing with the Secretary of State which officially designates its current registered office." The difficulty with applying KRS 355.9–401(e) to the instant case is that it was not in effect in December of 1985. The statute gives no indication that it is to be applied retroactively. A statute will not have retroactive effect unless such intent is clearly expressed in the statute. *Roberts v. Hickman County Fiscal Court*, Ky., 481 S.W.2d 279 (1972).

The special commissioner, in finding the filing of the liens in Webster County was proper, relied on *Wheeler v. Burgess*, 263 Ky. 693, 93 S.W.2d 351 (1936). In *Wheeler, supra*, 93 S.W.2d at 353, the Court stated that "[a] person may have many residences but can have but one domicile." The Court in *Wheeler, supra*, however did not address the specific issue of where a corporation resides.

*National Cash Register Co. v. K.W.C. Inc.*, 432 F.Supp. 82 (E.D.Ky.1977), involved an appeal from the bankruptcy court and the sole question was whether a corporation's residence under the Uniform Commercial Code was the location of its registered office or the location of its principal place of business. In *National Cash Register, supra*, a corporation was doing business only in Kenton County, Kentucky, and its articles of incorporation listed its address as Campbell County. National Cash Register filed a financing statement in Kenton County on some equipment purchased by the corporation. The corporation subsequently filed bankruptcy.

The Court in *National Cash Register, supra*, pointed out that Kentucky had not yet adopted a provision like what is now KRS 355.9–401(e), although the drafters of the uniform act had proposed such an amendment. The Court then reviewed Kentucky tax and venue cases, the policies underlying the U.C.C. and the wording of the then-existing statute. The Court then concluded that the residence of a corporation under the U.C.C. was the place set by the articles of incorporation, not its principal place of business. We believe this result is well reasoned.

■ KRS 376.440, however, is not part of the U.C.C. But many of the factors discussed in *National Cash Register, supra*, apply to this case. The transactions involved were commercial in nature and the policies concerning the need for certainty and clarity are the same in both. The Court in *National Cash Register, supra*, pointed out that if the residence was the principal place of business and the corporation had a number of places of business located in different counties, creditors would have difficulty determining which was the "principal" place of business. This reasoning would certainly apply to liens. Therefore, we believe a corporate owner resides for purposes of KRS 376.440 in the county where his registered office is located.

■ As a result of our holding on this issue, Jefferson County, not Webster County, was the corporate residence of Coal Exchange. Madisonville Recapping then did not properly perfect its lien.

The appellant next contends that a purchase money security interest takes priority over a nonpossessory statutory lien.

KRS 355.9–310 provides as follows:

When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise.

The trial court relied on *Corbin Deposit Bank v. King*, Ky., 384 S.W.2d 302 (1964), in concluding that the liens prevailed over the purchase money security interest. The Court in *King, supra*, based its decision on KRS 355.9–310. However, the lienholder had possession of the motor vehicle at issue in *King, supra*, until the holder of the

security interest removed it pursuant to a court order. Possession was not an issue in *King, supra,* and it is not dispositive of the case at bar.

■ The interpretation of KRS 355.9–310 urged by the appellant is certainly justified by its language. The statute uses the language "goods in possession" of a lienholder. The courts have a duty to construe a statute literally unless to do so would lead to an absurd or wholly unreasonable conclusion. *Bailey v. Reeves,* Ky., 662 S.W.2d 832 (1984). Requiring possession for KRS 355.9–310 to be effective would not lead to an absurd or wholly unreasonable result.

■ When the words of a statute are clear and unambiguous and express the legislative intent, there is no need for construction and the statute must be accepted as written. *Griffin v. City of Bowling Green,* Ky., 458 S.W.2d 456 (1970). KRS 355.9–310 is clear and unambiguous in its requirement of possession by the lienholder.

In addition, it is stated in Leibson and Nowka, *The Uniform Commercial Code of Kentucky* § 8.4(D)(7) as follows:

> If the statute creating the lien does not defer to a security interest, section 9–310 gives the lien priority over a security interest so long as the repairman maintains possession of the goods. If the repairman voluntarily relinquishes the goods without taking payment, the lien is subordinate to the security interest.

A similar view is expressed in 69 Am. Jur.2d, *Secured Transactions* § 509.

Watson Brothers argues that possession should not be required in cases such as this one where the machinery was so large that repair on the owner's premises was necessary. Watson Brothers maintain that if possession is required, under KRS 355.9–301, then repairmen of large mining or construction equipment would not have the same protection as others.

■ Without discussing any possible merit to the Watson Brothers' argument, we note that the plain meaning of a statute cannot be ignored by the courts simply because another interpretation might be considered to state a better policy. *Board of Education of Nelson County v. Lawrence,* Ky., 375 S.W.2d 830 (1963).

In his findings of fact and conclusions of law, the special commissioner referred to the appellant's "alleged" security interest. Thus, the special commissioner never found that the appellant had a perfected security interest and nothing in the record shows that. Essentially, what the special commissioner did was conclude that even if the appellant had a security interest, the lien had priority and it could not prevail at trial. Thus, the appellees were given a summary judgment. Consequently, on remand, the appellant would need to produce sufficient evidence of its claimed security interest or again lose on summary judgment or perhaps a directed verdict.

The judgment is reversed and remanded for further proceedings consistent with this opinion.

All concur.